Belknap
No. 6582

STATE OF NEW HAMPSHIRE

v.

DENNIS STONE

February 28, 1974

*Warren B. Rudman,* attorney general, and *David W. Hess,* assistant attorney general (*Mr. Hess* orally), for the State.

*Wescott, Millham & Dyer* (*Mr. Peter V. Millham* orally) for the defendant.

LAMPRON, J. Indictment charging that the defendant on the tenth day of April 1972 "did sell" to one Daniel Perria two tabs of LSD, a controlled drug, for a total of four dollars. Trial by jury which found the defendant guilty of the offense charged. The Trial Court (*Keller,* C.J.) sentenced Stone to be confined at the State prison for not more than five years nor less than three. Defendant's exceptions to the charge as given and to the court's failure to include certain requested instructions were reserved and transferred. The issue to be decided is whether the acts of the defendant as testified to by Perria constituted an illegal sale under RSA ch. 318-B (Supp. 1973).

Perria, an undercover agent for the police, testified that on April 10, 1972, he and a female companion met the defendant and a friend in a laundromat in Lakeport. He asked where he could obtain LSD and the defendant told him that it could be obtained at the home of David Piper in Weirs. All four boarded Perria's car and under defendant's directions drove to Piper's house. Defendant told Perria that the price of LSD was two dollars a tablet and was given four dollars by Perria. Defendant was the only one who left the car. He returned in a few minutes and handed Perria two tablets of LSD. Defendant told Perria he could get him more but Piper would not sell drugs to Perria because he only dealt with people he knew. Perria testified that defendant told him that Piper had asked him "to go in partners with him" and that defendant had said "I don't have to worry, anytime I ever get into trouble he'll bail me out."

RSA 318-B:2 (Supp. 1973) reads in part as follows: "It shall be unlawful for any person to manufacture, possess, have under his control, sell, purchase, prescribe, administer, dispense, or compound any controlled drug ... except as authorized in this chapter." RSA 318-B:26 I (a) (Supp. 1973) provides that a natural person who "sells" a "(2) [c]ontrolled

drug other than a narcotic drug shall be guilty of a class A felony . . . ." RSA 318-B:26 I (b) (Supp. 1973) provides that a natural person who possesses or has under his control a "(2) [c]ontrolled drug other than a narcotic drug, shall be guilty of a misdemeanor . . . [and] [f]or each subsequent offense he shall be guilty of a class B felony, . . . ." The statute thus places a heavier penalty on those who sell or distribute drugs than on those who merely possess or have them under their control. Under RSA 318-B:1 XXX (Supp. 1973) " 'Sale' means barter, exchange or gift, or offer therefor, and each such transaction made by any person whether as principal, proprietor, servant or employee."

Defendant maintains that because there was no evidence that he made any profit from the transaction and that on the facts he was an agent of the buyer he could not be found guilty on this indictment charging that he "did sell" a controlled drug to Perria in violation of RSA ch. 318-B (Supp. 1973). In support of his position he relies on cases in which the courts have adopted the narrower definition of "sale" which prevails under the Uniform Commercial Code. *Commonwealth v. Harvard,* 356 Mass. 452, 253 N.E.2d 346 (1969); *People v. Fortes,* 24 App. Div. 2d 428, 260 N.Y.S.2d 716 (1965); *Durham v. State,* 162 Tex. Crim. 25, 280 S.W.2d 737 (1955); *see* RSA 382-A:2-103,-106.

RSA ch. 318-B (Supp. 1973) was enacted by Laws 1969, ch. 421 to supersede the then existing drug act. RSA ch. 318-A. "This bill [now RSA ch. 381-B] is the master drug bill and encompasses all new definitions. It also encompasses new penalties. It is a totally new enforcement bill and is essential to cope with the drug problem existing today." N.H.S. Jour. 1210 (1969). It is intended to include the whole problem of drugs: (1) their creation ("manufacture", "compound"), (2) their possession ("possess", "have under his control"), and (3) their transfer or distribution ("sell", "purchase", "prescribe", "administer", "dispense"). RSA 318-B:2 (Supp. 1973). The definition of a "sale" in this statute (RSA 318-B:1 XXX (Supp. 1973)) is much broader than that governing commercial transactions, that is, "the passing of title from a seller to a buyer for a price." RSA 382-A:2-106 (1). A "sale" for the purposes of the Controlled Drug Act involved here

includes a "gift or offer". It applies to any agent involved with no restriction that he must be acting for the seller and not the buyer. The word consideration is not mentioned.

The words "sell" or "sale" must be interpreted within the context of the whole statute of which they are a part. *Costoras v. Noel*, 100 N.H. 81, 83, 119 A.2d 705, 706 (1956). They need not have the same meaning in this criminal statute that they have in the statute governing commercial transactions. *State v. Allen*, 292 A.2d 167, 170 (Me. 1972); *see Champa v. Consolidated Fin. Corp.*, 231 Ind. 580, 110 N.E.2d 289 (1953). These words must be interpreted so as to carry out, not defeat, the manifest objective sought by the statute, the regulation of controlled drugs in all its aspects. *State v. Folland*, 100 N.H. 188, 190, 122 A.2d 268, 270 (1956); *Granville v. State*, 287 A.2d 652, 654 (Del. 1972). We hold that proof that the defendant made no profit or received no other consideration from this transaction, or proof that he was simply a procuring agent for Perria would not prevent the defendant's action from constituting a sale under RSA ch. 318-B (Supp. 1973). The jury could properly find that defendant was guilty of the charge that he "did sell" two tabs of LSD to David Perria in violation of section 318-B:2 of the above statute by his actions in bringing about the transfer of the LSD to Perria. *State v. Allen supra; Granville v. State supra; State v. Koppenhafer*, 502 P.2d 610 (Ore. App. 1972); *Higby v. State*, 485 P.2d 380 (Wyo. 1971); Annot., 93 A.L.R.2d 1008 (1964).

We find no merit in the claim that the use of the word "sale" by the court in its instructions to the jury instead of the words "did sell" used in the indictment prejudiced the defendant.

*Exceptions overruled.*

All concurred.