Strafford
No. 81-222

THE STATE OF NEW HAMPSHIRE

v.

GILMAN MCDUFFEE

March 28, 1983

*Gregory H. Smith,* attorney general (*Donald J. Perrault,* assistant attorney general, on the brief and orally), for the State.

*Law Offices of Stanton E. Tefft,* of Bedford (*Mr. Tefft* and *Daniel J. Harkinson* on the brief, and *Mr. Tefft* orally), for the defendant.

DOUGLAS, J.   The defendant was tried by a jury and convicted in Superior Court (*Cann,* J.) of being an accomplice to burglary. RSA 626:8; RSA 635:1. The defendant argues on appeal that: (1) he was denied due process and unfairly prejudiced by the State's delay of more than twenty months in notifying him that he was a suspect in the burglary; (2) he was denied a speedy trial; and (3) the trial court erred in admitting evidence that the principal in the burglary, who was also the key prosecution witness, was not in another State when the burglary occurred. We affirm.

During the first week in May 1978, the Dover police received a tip from an informant that Carlton Gosselin, Jr., and the defendant, Gilman McDuffee, were going to burglarize a house along Route 202 in the Strafford-Barrington area. This information was given to New Hampshire State Police Corporal Ronald Kalway, who determined from the details of the location that the target of the burglary was the home of Bertha Foss. At about 10:30 p.m. on the night of May 9, 1978, the Dover police telephoned Corporal Kalway and informed him that they believed the burglary would take place that evening. Corporal Kalway and Strafford Police Chief Edgar Burroughs set up a stakeout of the Foss home beginning at 11:15 p.m.

At approximately the same time that Corporal Kalway received word of the impending burglary, the defendant dropped Gosselin in the vicinity of the Foss home. After seeing Mrs. Foss leave for work at 10:45 p.m., Gosselin entered the house and spent the next hour gathering goods he intended to take with him. He telephoned the defendant at the VFW club in Rochester, and the defendant returned to pick him up between 12:30 and 12:45 a.m. After loading the stolen goods into the trunk of the car, the defendant drove Gosselin to the home of Donna and James Sanger, Gosselin's sister and brother-in-law. The stolen goods were stored at the Sanger home.

Neither Corporal Kalway nor Chief Burroughs saw or heard any car stop near the Foss home during their stakeout. About 3:00 a.m., the two police officers entered the Foss house and discovered that it had already been burglarized. Corporal Kalway dusted the burglary scene for fingerprints and examined some tire print marks on the soft shoulder of the road near the burglarized residence.

The next day, the informant telephoned the Dover police, who notified Corporal Kalway that the stolen goods could be found at the

Sanger home. Corporal Kalway obtained a search warrant, and on May 11 he searched the Sanger home, recovering virtually all of the items that had been taken during the burglary. A subsequent dusting of the stolen items for fingerprints apparently failed to yield any conclusive evidence, as Corporal Kalway did not submit any prints to the State police crime laboratory for analysis. Donna and James Sanger were indicted for possession of stolen property, but the charges were eventually *nol prossed.* Neither of these individuals at that time implicated the defendant in the burglary.

In June 1978, while Gosselin was being held at the Rochester Police Station on an unrelated charge, the corporal questioned him about the Foss burglary. Corporal Kalway did not mention the defendant at the time, however. On December 28, 1979, Gosselin was questioned concerning a number of other burglaries, and for the first time the defendant McDuffee was implicated in the Foss burglary. On January 3, 1980, the Strafford County Grand Jury indicted the defendant on sixty-two counts of being an accomplice in numerous burglaries, including the burglary of the Foss residence, and nine counts of burglary.

During the next thirteen months, the defendant was tried and acquitted in connection with two separate burglaries. On February 10, 1981, the Strafford County Attorney notified the defendant's attorneys that the defendant would be tried the following month for the Foss burglary. The defendant filed a motion for a continuance and a motion to dismiss for lack of speedy trial. On March 3, 1981, the continuance was granted but the speedy-trial motion was denied. In May 1981, sixteen months after his indictment, the defendant was convicted of being an accomplice to the burglary of the Foss residence.

The defendant's first contention is that he was denied due process because the State waited twenty months to notify him that he was a suspect in the Foss burglary. The defendant argues that he was unfairly prejudiced because if he had been notified earlier, he would have had an opportunity to develop properly exculpatory evidence, primarily testimony that he frequently picked up his fiancee when she finished work at the end of the second shift at the General Electric plant in Somersworth at about 11:30 p.m. At trial, the defendant testified that he could not recall whether he had picked up his fiancee the night of the Foss burglary. In light of the fact that the stolen property was recovered two days after the burglary, the defendant claims the State's investigation was virtually completed at that point, and thus there was little justification for not informing the defendant that he was suspected of having been involved in the burglary of the Foss home.

▮ The defendant has cited no authority, and we are aware of none, supporting his argument that the requirement of due process imposed upon the State, under the circumstances of this case, an affirmative duty to inform him that he was suspected of being implicated in a crime. The farthest that the United States Supreme Court has been willing to go has been to suggest that the due process clause *may* require the dismissal of a criminal charge against a defendant when, due to unreasonable delay, "actual prejudice resulting from *pre-accusation delays*" occurs. *United States v. Marion*, 404 U.S. 307, 324 (1971); *see United States v. Lovasco*, 431 U.S. 783, 796–97 (1977). The defendant does not argue that the State was obligated to indict him within a specified period after the Foss burglary, but rather that it was obligated to tell him that he was suspected of having been a party to the burglary. We cannot accept this novel contention.

▮ The defendant next argues that the delay of sixteen months between his indictment and trial denied him his right to a speedy trial. Length of the delay is not the dispositive factor in evaluating a speedy-trial claim, but we must also consider the reason for the delay, whether the defendant asserted his right, and the resulting prejudice to the defendant. *State v. Perron*, 122 N.H. 941, 950, 454 A.2d 422, 427 (1982); *State v. Weitzman*, 121 N.H. 83, 86, 427 A.2d 3, 5 (1981); *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

During the sixteen months between the defendant's indictment and trial in this case, he was tried three times for other crimes, one resulting in a mistrial, and two resulting in acquittals. The record shows that the State continuously proceeded with its prosecution of the defendant on the seventy-one burglary indictments against him. The defendant never moved for consolidation of the charges, all of which involved different burglaries, and opposed the State's attempt to consolidate the offenses for trial. In effect, the defendant's assertion is tantamount to saying that a criminal defendant who allegedly commits multiple unrelated offenses is constitutionally protected at a certain point from successive trials.

▮ In the present case, the defendant has large numbers of unrelated indictments pending against him but has asserted his right to have them tried separately. By objecting to the State's efforts to consolidate these cases for trial, the defendant, in effect, acquiesced in delaying the commencement of this case. The defendant cannot have it both ways, insisting on separate trials and attempting to dismiss the indictments against him for lack of speedy trial. We conclude that the defendant has not been denied his constitutional right to a

speedy trial. *See State v. Novosel,* 120 N.H. 176, 183, 412 A.2d 739, 745 (1980).

The defendant's final argument is that the trial court committed reversible error when it allowed into evidence testimony by Gosselin, the prosecution's key witness, that he was not in another State on May 9, 1978, the date of the burglary of the Foss home. Gosselin testified at his deposition that he was working at a hotel in Dallas, Texas, from December 1977 to June 1978. Before trial, the defendant moved to dismiss the indictment against him involving the Foss burglary, because Gosselin was not in New Hamsphire at the time and could not have firsthand knowledge of the defendant's alleged involvement in that burglary. Thereafter, the Strafford County Attorney telephoned the Dallas hotel where Gosselin had worked and confirmed that Gosselin was employed there only from March 1977 to June 1977. Before trial, the county attorney suggested that Gosselin telephone the hotel to learn for himself the correct period of his employment.

At trial, over the defendant's objection and exception, Gosselin testified that he called the Dallas hotel and that, after talking to a woman in the payroll department there, it was his conclusion that he had been employed in Texas from March 1977 to June 1977, not from December 1977 to June 1978. Gosselin stated that he returned immediately thereafter to New Hampshire.

The defendant claims that the trial judge essentially allowed Gosselin to testify about what the county attorney had learned regarding the correct period of Gosselin's employment, and that this was inadmissible hearsay which jeopardized the defendant's attempt to present exculpatory or impeachment evidence. To the contrary, the trial judge properly allowed Gosselin to testify about the new information concerning his dates of employment in Dallas, once the county attorney laid a proper foundation for such testimony. The county attorney was entitled to act independently in telephoning Texas and then in requesting Gosselin to call to verify the period of his employment in order to refresh his memory. Gosselin therefore testified regarding his own telephone conversation with the Dallas hotel, not that of the county attorney, and he stated what he determined was the date of his employment based upon his conversation with the payroll office. He did not testify as to what the woman in the payroll office told him, which would have been inadmissible hearsay.

Furthermore, the trial judge properly ruled that the procedure used by Gosselin to revise his deposition testimony was a matter for defense counsel to develop during cross-examination. The

defendant's lawyer subsequently questioned Gosselin at length about his change of testimony. We find no error in the trial court's admission of the challenged testimony into evidence.

*Affirmed.*

BATCHELDER, J., did not participate in the decision of this case; the others concurred.