Hillsborough
No. 82-141

## THE STATE OF NEW HAMPSHIRE

v.

## BRUCE BERGER

June 22, 1984

*Gregory H. Smith*, attorney general (*Peter W. Mosseau*, assistant attorney general, on the brief, and *Edna M. Conway*, attorney, orally), for the State.

*James E. Duggan*, appellate defender, and *Joanne S. Green*, assistant appellate defender, of Concord (*Mr. Duggan* on the brief, and *Ms. Green* orally), for the defendant.

KING, C.J.   The defendant, Bruce Berger, appeals his conviction by a jury in Superior Court (*Flynn*, J.) of selling marijuana. RSA 318-B:2, I (Supp. 1981). Issues concerning the following matters are presented: (1) construction of the term "sale" in the New Hampshire Controlled Drug Act, RSA chapter 318-B; (2) request for mistrial resulting from possible prosecutorial error; (3) violation of the rule of *State v. Hastings*, 120 N.H. 454, 417 A.2d 7 (1980), and of the right to speedy trial; and (4) disclosure of the confidential informant's identity. For the reasons that follow, we affirm.

Gary Bashaw, an undercover agent for the State Police, testified that on December 2, 1980, the defendant entered the Nashua apartment of Wayne Morrow carrying a box. Bashaw said that the defendant then proceeded directly to a couch where Bashaw and Morrow sat and placed the box between them. According to Bashaw, the defendant instructed Morrow to open the box. Morrow opened the box and told Bashaw to take four one-ounce plastic bags of marijuana out of the box. Bashaw selected the bags, gave Morrow $100 for the alleged marijuana, placed the bags into a paper bag and left the apartment.

Bashaw further testified that on the same day he purchased the alleged marijuana, he brought the plastic bags to the New Hampshire State Police Crime Laboratory for a chemical analysis. Nine days later, on December 11, 1980, one of the four bags was analyzed by the State Police and determined to contain marijuana.

On March 27, 1981, the defendant was arrested for selling marijuana to Bashaw. Thereafter, on June 2, 1981, the defendant was indicted for purposely selling marijuana in violation of RSA chapter

318-B, the Controlled Drug Act. The trial on this indictment commenced in the superior court on January 21, 1982.

We turn to the first issue raised by the defendant. The defendant argues that his act of delivering marijuana to a "seller" does not constitute a "sale" as that term is used in RSA chapter 318-B. Accordingly, he maintains that since the State's evidence that he engaged in a sale of drugs was insufficient as a matter of law, his motion for a directed verdict of acquittal should have been granted by the trial court. We disagree.

RSA 318-B:2, I (Supp. 1981), states, in pertinent part, that "[i]t shall be unlawful for any person to . . . sell . . . or possess with intent to sell . . . any controlled drug . . . ." RSA 318-B:26, I(a)(2) (Supp. 1981) provides, in part, that any unauthorized person who "sells" a "[c]ontrolled drug other than a narcotic drug shall be guilty of a class A felony if a natural person . . . ." The term "sale" is defined as a "barter, exchange or gift, or offer therefor, and each such transaction made by any person whether as principal, proprietor, agent, servant or employee." RSA 318-B:1, XXX (Supp. 1981).

In view of the legislative intent of the Controlled Drug Act "to cope with the drug problem existing today," N.H.S. JOUR. 1210 (1969), we have interpreted the meaning of the word "sale," as defined by the act, to be much broader in scope than that given to it in other commercial transactions; *i.e.,* "the passing of title from a seller to a buyer for a price." RSA 382–A:2–106(1); *see State v. Stone,* 114 N.H. 114, 116, 316 A.2d 196, 197 (1974). This court has construed the act to reach the "transfer or distribution" of drugs. *Id.* We have specifically defined sale to include a "gift or offer," *id.* at 116–17, 316 A.2d at 197, and applied the definition to "any agent involved with no restriction that he must be acting for the seller and not the buyer." *Id.* at 117, 316 A.2d at 197; *see State v. Pelillo,* 117 N.H. 674, 675, 377 A.2d 615, 616 (1977) (RSA chapter 318-B "makes the transfer [of a controlled drug] in any capacity illegal").

For purposes of the case at bar, we must interpret the words "sell" or "sale" to "carry out, not defeat, the manifest objective sought by the statute, the regulation of controlled drugs in all its aspects." *State v. Stone, supra* at 117, 316 A.2d at 197; *see State v. Dunphy,* 114 N.H. 740, 743, 328 A.2d 787, 789 (1974) ("in interpreting RSA 318-B:26 it must be approached as part of a totality and viewed in terms of what it was enacted to accomplish"). Consonant with this approach to statutory construction, we will not confine the scope of our analysis to a strictly literal interpretation of the terms "sell" or "sale" if such a construction would thwart enforcement of the broad purpose of the act. *See id.*

Here, the defendant personally delivered the marijuana to the buyer and the seller. The defendant then instructed the seller to open the box containing the marijuana. Indeed, the defendant's conduct as deliveryman was such an essential part of the illegal transaction that the sale would not have occurred but for his participation. Trooper Bashaw testified that: "Bruce Berger delivered the drugs, without which the deal could never have been consummated." Moreover, according to Bashaw's testimony, the entire illegal drug transaction was accomplished in the presence of the defendant.

■ It is our opinion that the Controlled Drug Act, in view of its broad legislative purpose, indicates that the actions of a defendant who delivers a controlled drug to the seller and purchaser, instructs the seller to open the box containing the illegal drug, and then remains to view the entire illegal drug transaction, constitute a sale within the scope of RSA chapter 318-B. Accordingly, we hold, based upon the circumstances of this case, that the evidence was sufficient to establish that the defendant purposely sold marijuana as proscribed by RSA 318-B:2, I (Supp. 1981).

Second, the defendant argues that the trial court incorrectly denied his motion for a mistrial. The defendant's motion was predicated on his claim that he was irreparably prejudiced by the prosecutor's display to the jury of four one-ounce plastic bags purporting to contain marijuana, and by the prosecutor's attempt to introduce the bags into evidence. The defendant alleges that the prosecutor moved the bags into evidence, over the defendant's objection, with the knowledge that the necessary foundation had only been laid for admission of one of the bags. The record indicates that the New Hampshire State Police Crime Laboratory had performed a chemical analysis of the contents of only one of the bags. The analysis determined that the bag contained marijuana.

The State's expert witness, Trooper John Ellsworth of the State Police Crime Laboratory, displayed the three bags which were not chemically analyzed during his testimony describing his examination of the one bag identified as containing marijuana. The transcript reads:

> "[T]hese are the other bags that were submitted with this exhibit by Trooper Bashaw and each one of these bags also has Trooper Bashaw's initials on the bag to show— right here to show that these are the bags that were submitted with this particular drug case."

A colloquy between the county attorney and Trooper Ellsworth followed:

"Q: And you subjected the contents of bag number one to the test that you described?

A: Yes, sir, this one here.

Q: And did not subject the other three bags?

A: No, I didn't."

The State then moved, over the objection of the defendant, that the paper bag containing all four one-ounce plastic bags be marked as an exhibit. The paper bag was marked for identification by the trial court. The three plastic bags in question were never admitted into evidence.

In response to the defendant's motion for a mistrial, the trial court conducted a general *voir dire* of the jury to determine whether the members of the jury could "completely disregard" the three bags which were not proven to contain marijuana. The trial court ascertained that the jury would not be prejudiced by the display of the three bags in question and, accordingly, denied the defendant's motion. The defendant's exception was noted.

In his jury charge, the trial judge instructed the jury to disregard the three bags at issue:

". . . I spoke to you about the testimony of the State regarding these four plastic bags of marijuana and indicated that the State has only proven through the laboratory tests that were made that only one bag contained marijuana. You are not to speculate as to what is in the other three bags, and if the State's testimony implied that the other bags contained marijuana you must disregard any such implication and not draw any inference from that."

We are not convinced, as a matter of law, that the three bags in question, together with the one bag proven to contain marijuana, could not have been admitted into evidence on the basis of Bashaw's testimony that he indeed purchased four one-ounce plastic bags of vegetative matter from Morrow. Thus, we are unwilling to concede the defendant's position that prosecutorial error was committed by the State's display of relevant evidence to the jury, the probative value of which may well have outweighed the danger of unfair prejudice. However, even assuming, *arguendo*, the existence of prosecutorial error, for the reasons that follow we believe that the trial court's remedial efforts relieved the error of its prejudicial impact.

The trial court's general *voir dire* of the jury in this case, together with the court's curative jury instructions, were designed to remedy possible prosecutorial error which might have prejudiced the defendant, *State v. Radziewicz*, 122 N.H. 205, 213, 443 A.2d 142, 147

(1982), and have led ultimately to an unjust verdict. *State v. Booton*, 114 N.H. 750, 757, 329 A.2d 376, 382 (1974), *cert. denied* 421 U.S. 919 (1975).

■■■ Our jury system is premised upon the belief that jurors will follow the trial court's curative instructions. *See State v. Novosel*, 120 N.H. 176, 186, 412 A.2d 739, 746 (1980). In view of this fundamental belief, we hold that the trial court's two-pronged effort to remove the possible prejudicial impact of the displayed plastic bags was sufficient to support the court's denial of the motion for mistrial. *See State v. Seeley*, 116 N.H. 831, 834, 368 A.2d 1171, 1174 (1976). We do not believe that the assumed prosecutor's error in this case rises to the same level of irreparable prejudice as was created, for example, by the display of an inadmissible blood-stained bedspread to a jury in *State v. Scarlett*, 118 N.H. 904, 395 A.2d 1244 (1978) (in which this court overturned the trial court's denial of the defendant's motion for mistrial).

Third, the defendant argues that his July 7, 1981, motion to dismiss the indictment for purposely selling marijuana was wrongly denied by the Superior Court (*Contas*, J.), since the State violated the *Hastings* rule by failing to indict the defendant within sixty days of his arrest. *See State v. Hastings supra*. The Superior Court (*Contas*, J.) ruled that the delay was not unreasonable, that the State had a good reason for the delay, and that the defendant was not unduly prejudiced. Further, the defendant contends that his second motion to dismiss was incorrectly denied by the Superior Court (*Contas*, J.) because his constitutional right to a speedy trial was abridged by the nearly ten-month delay in trial from the date of arrest.

■ In *State v. Hastings, id.* at 455, 417 A.2d at 8, this court held that an indictment should be brought within sixty days from the date of arrest. If the State fails to bring an indictment within the sixty-day period, it must demonstrate that the delay was not unreasonable. *Id.* at 455–56, 417 A.2d at 8.

The State contends that the indictment of the defendant seven days beyond the 60-day indictment period was necessitated by its protracted effort to complete the undercover investigations of the defendant and the possible involvement of associates of the defendant in the drug trafficking. In the State's objection to the defendant's motion to dismiss, it argued that the seven-day delay was compelled by the need to evaluate the quality of the police investigation of the defendant.

■■ While the sixty-day *Hastings* rule is "not to be lightly regarded," *State v. Hughes*, 123 N.H. 66, 67, 455 A.2d 1069, 1070

(1983), it should not be mechanically applied so as to dismiss an indictment whenever there is a short delay in bringing the indictment. In the present case, the record supports the trial court's determination that the seven-day delay in indicting the defendant was not unreasonable.

We turn to the defendant's argument that the nearly ten-month delay between his arrest and trial denied his right to a speedy trial. *See* N.H. CONST. pt. I, art. 14. In determining the constitutionality of the delay, we consider the period between the arrest and trial, rather than the period beginning at the time of the offense. *See State v. Novosel, supra* at 182, 412 A.2d at 744.

The right to a speedy trial recognized by this court has not spawned fixed deadlines. *State v. Cole,* 118 N.H. 829, 831, 395 A.2d 189, 190 (1978); *see State v. Perron,* 122 N.H. 941, 951–52, 454 A.2d 422, 428 (1982). Instead, the right to a speedy trial is "'necessarily relative, and must be considered with regard to the practical administration of justice.'" *State v. Cole, supra* at 830, 395 A.2d at 190 (quoting *Riendeau v. Milford Municipal Court,* 104 N.H. 33, 34, 177 A.2d 396, 398 (1962)).

To determine whether the defendant's right to a speedy trial has been denied, we must consider four factors: (1) the length of the delay; (2) the reasons for the delay; (3) whether the defendant asserted his right; and (4) the prejudice to the defendant. *State v. McDuffee,* 123 N.H. 184, 187, 459 A.2d 251, 254 (1983). This court places substantial emphasis on the last two factors. *State v. Perron, supra* at 951, 454 A.2d at 427.

The State asserts that the nearly ten-month delay between the defendant's arrest and trial was due to the case backlog in the Hillsborough County Superior Court and the State's need to complete its undercover investigation of the defendant and his possible associates. We note that the defendant was diligent in asserting his right to a speedy trial.

The defendant cites three instances of prejudice resulting from the delayed trial: First, that three persons present at the sale were unavailable to testify at a pretrial deposition and at trial due to the defendant's reliance on unsubstantiated representations by the State that the defendant's prosecution "file" was closed. We agree with the State's position that the defendant's failure to depose these individuals resulted not from the delay between arrest and trial but rather from the defendant's belief that he would not be prosecuted. Indeed, there is no evidence in the record before us which supports the defendant's notion that somehow he was led to believe that he would not be prosecuted.

The second example of prejudice cited by the defendant is Trooper Bashaw's loss of memory. Specifically, the defendant refers both to Bashaw's difficulty in recounting precise facts about the marijuana sale and to the disputed accuracy of Bashaw's drawing of the relevant apartment layout. Our review of Bashaw's testimony does not reveal a failed memory. On the contrary, Bashaw's recapitulation of the circumstances surrounding the sale is detailed and comprehensive. A dispute at trial over the layout of the apartment in question, by itself, is not indicative of a flawed memory. Moreover, such a disagreement is certainly not enough for this court to hold that the defendant had been prejudiced to the extent that he was denied his right to a speedy trial. *See State v. Little*, 121 N.H. 765, 773, 435 A.2d 517, 522 (1981).

The defendant's asserted anxiety and concern resulting from the nearly ten-month wait for trial is the third source of prejudice which allegedly impaired his right to a speedy trial. Throughout the period of delay, the defendant was never incarcerated. While we concede that the defendant in this case, like any other criminal defendant, experienced stress during his wait for the impending trial, we do not believe that such a strain was produced by an unlawful exercise of "criminal justice administration." *State v. Novosel, supra* at 183, 412 A.2d at 745.

We conclude that the defendant was not denied his constitutional right to a speedy trial.

Finally, we turn to the defendant's argument that the Trial Court (*Contas*, J.) erred in denying his motion to disclose the identity of the State's confidential informant. He contends that since the informant introduced Trooper Bashaw to the defendant and because the informant may have been present at the marijuana sale, the informant's testimony at trial was essential to the defendant's case. Thus, the defendant concludes that the informant's unavailability for trial deprived the defendant of a fair trial.

This court has not adopted a fixed rule regarding disclosure of the identity of informants for the State. *See State v. Thorp*, 116 N.H. 303, 310, 358 A.2d 655, 661 (1976). There are instances when "at the risk of having the prosecution dismissed, due process compels the disclosure of the informer's identity such as where the defendant would otherwise be denied the right to confront his accusers or denied the right to a fair trial." *Id.* Based on the particular circumstances of each case and in view of the possible significance of the informant's testimony, among other factors, this court will balance the "public interest in promoting the flow of informa-

tion against the individual's right to prepare his defense." *Id.* (quoting *Roviaro v. United States*, 353 U.S. 53, 62 (1957)).

The trial court may compel disclosure of the identity of a State informant when there is evidence demonstrating that the informant was a participant in the illegal activity charged "to such an extent that his testimony may be considered essential to a fair determination of the issue of guilt or innocence . . . ." *State v. Schena*, 110 N.H. 73, 74–75, 260 A.2d 93, 94 (1969). It is true that the defendant's purpose in seeking disclosure of the State informant in this case relates to his guilt or innocence. There is also controverted testimonial evidence in the record before this court indicating that the State informant was present at the illegal drug sale.

At the hearing on the motion to disclose, Bashaw testified that he was introduced to the defendant by the informant on the Friday prior to the sale. Bashaw further stated that the informant was not present when the sale took place and that he had no contact with the informant outside of the apartment on the day of the sale.

The defendant and his female companion testified at the hearing that the person they believed was the State informant was present in the apartment at the time of the sale. However, the defendant's contention that the State informant was a participant in the marijuana sale, or even that the informant orchestrated the meeting between the buyer and seller, is without substantiation in the record. Accordingly, it cannot be assumed for purposes of our review that the State informant participated in the illegal sale to such a degree that his or her testimony would be essential to a fair adjudication of the defendant's guilt or innocence.

Further, we agree with the assistant county attorney's argument at the hearing that if the defendant was convinced of the identity of the informant, there was nothing which prevented the defendant from subpoenaing that person.

In view of the meagre record in this case, we conclude that the trial court's denial of the defendant's motion to compel disclosure of the identity of the State informant was not an abuse of discretion. *See id.* at 75, 260 A.2d at 94–95.

*Affirmed.*

All concurred.