UNITED STATES of America, Plaintiff–Appellee,

v.

Kenneth H. NASH, Defendant–Appellant.

Nos. 88–2764 and 88–2860.

United States Court of Appeals, Seventh Circuit.

Argued April 5, 1989.

Decided June 15, 1989.

Rehearing and Rehearing En Banc Denied Aug. 11, 1989.

---

K. Tate Chambers, Asst. U.S. Atty., Office of the U.S. Atty., Peoria, Ill., for U.S.

Gary L. Betz, U.S. Atty., Tampa, Fla., for Nash.

Before BAUER, Chief Judge, WOOD, Jr., Circuit Judge, and WILL, Senior District Judge.[1]

BAUER, Chief Judge.

After a bench trial, the district court judge convicted defendant Kenneth Nash of possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and of carrying a firearm during a drug trafficking offense in violation of 18 U.S.C. § 924(c). The court sentenced Nash to six months imprisonment for the possession conviction and to five years imprisonment for the weapons conviction. The court also fined Nash $75,000. On appeal, Nash raises two issues. First, he contends that the district court should have granted his motion to suppress evidence because the search of his car was illegal. Second, he argues that he was not convicted of a "drug trafficking offense" within the meaning of 18 U.S.C. § 924(c). For the following reasons, we affirm Nash's conviction.

I.

On the morning of November 11, 1987, Illinois State Trooper James Drozdz was on duty alone when the defendant, driving a 1982 Mercury Grand Marquis, entered the highway in front of Drozdz, swerving as he made the turn onto the highway. The car was coming from Gulfport, Illinois, where the bars do not close until 5:00 a.m. Officer Drozdz followed the car, which continued to weave its way along the highway. Drozdz followed the car for approximately four miles. When he approached within a car-length of the defendant's car, Drozdz noticed that the defendant made a "furtive gesture." He observed that the defendant appeared to raise himself up from the car seat and began reaching towards the floor. Although unmarked, Officer Drozdz's car clearly was identifiable as a police car. It was a dark blue Dodge equipped with several antennae and police lights on the rear shelf. Drozdz followed the defendant for another quarter of a mile before pulling him over.

Drozdz approached the car and noticed that the defendant's appearance was unkempt: his face was unshaven and puffy, his hair mussed, his eyes red, and his breath smelled of alcohol. A German shepard was in the back seat. After observing a jacket tucked under defendant's lap and stretched out to the floor, Drozdz asked Nash to leave the car. Drozdz reached into the car and lifted up the jacket with his left arm. Under the jacket was an open garbage bag containing what looked and smelled like marijuana. Drozdz took the defendant back to the squad car, conducted a pat-down search, gave him the *Miranda* warnings, and called for back-up assistance. After receiving Nash's consent, Drozdz searched the car further. He found a loaded .25 caliber semi-automatic pistol and a stun gun under the driver's seat. In addition to the pound of marijuana found in the front seat, he found another four pounds of marijuana and a leather pouch containing more than $2,500 in $50 bills in the trunk.

II.

Nash now objects to Officer Drozdz's initial search of the car, which consisted of Drozdz lifting the jacket off the floor. In *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), the Supreme Court set forth the circumstances in which the search of a vehicle incident to an investigatory stop is lawful. The Court stated:

the search of an automobile, limited to those areas in which a weapon may be

---

**1.** The Honorable Hubert L. Will, Senior Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

placed or hidden, is permissible if the police officer possesses a reasonable belief that based on 'specific and articulate facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

*Id.* at 1049, 103 S.Ct. at 3480 (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968)). *See also United States v. Denney*, 771 F.2d 318 (7th Cir.1985). The question, then, is whether Officer Drozdz's concern for his safety thus warranting his search of the car, was justified under the circumstances. We think it was. In extending the principle of *Terry* to the search of areas accessible to the person stopped, the Supreme Court recognized that "roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect." *Long*, 463 U.S. at 1049, 103 S.Ct. at 3480. When Drozdz searched Nash's car, he was confronted with the situation described in *Long.*

Officer Drozdz testified that Nash made a "furtive gesture" as the police car pulled up behind him. A reasonable interpretation of this "furtive gesture" was that the defendant was hiding a gun, thus giving Drozdz cause to be concerned about his safety. *See Denney*, 771 F.2d at 322 ("The defendant's furtive gestures in moving or leaning toward the right side of the truck —a motion which the officers reasonably interpreted was consistent with reaching for a weapon—compounded the officers' belief that violence was imminent".). *See also Sibron v. New York*, 392 U.S. 40, 66–67, 88 S.Ct. 1889, 1904–05, 20 L.Ed.2d 917 (1968) (suspect's deliberately furtive movements when approached by police officers "are strong indicia of *mens rea* "). Drozdz's suspicion was further heightened when he noticed a jacket tucked under the defendant's lap and stretched out over the floor of the front seat. The jacket covered the area in which Nash appeared to have hidden something when he made the "furtive gesture". These two facts, the furtive gesture and the position of the jacket, warranted Drozdz's belief that a search was necessary for his safety. During the hearing on defendant's motion to suppress the evidence, the district court assessed Drozdz's situation as follows: "it seems to me it would have been foolhardy for the officer not to have done what he did." The district court aptly assessed the situation.

Officer Drozdz also limited his search to "what was minimally necessary to learn whether (Nash) was armed." *Terry*, 392 U.S. at 30, 88 S.Ct. at 1884. As discussed above, Drozdz had a reasonable suspicion that there might be a weapon underneath the jacket. He lifted up the jacket to ensure that a gun was not underneath it. Thus, "it is clear that the intrusion was 'strictly circumscribed by the exigencies which justifi[ed] its initiation.'" *Long*, 463 U.S. at 1051, 103 S.Ct. at 3481 (*quoting Terry*, 392 U.S. at 26, 88 S.Ct. at 1882). Because the initial search of the car did not violate the Fourth Amendment, the district court correctly denied Nash's motion to suppress the evidence.

### III.

■ Next, Nash contends that he was improperly convicted of violating 18 U.S.C. § 924(c), which forbids the use or possession of a firearm during and in relation to a drug trafficking claim. Section 924(c)(2) defines a "drug trafficking crime" as "any felony violation of Federal law involving the distribution, manufacture, or importation of any controlled substance." Nash argues that possession of marijuana with intent to distribute is not a crime involving drug distribution within the meaning of § 924(c)(2).[2] He claims that possession with intent to distribute is only a possessory offense and is not the serious type of crime that Congress intended the statute to encompass. We disagree.

---

2. Nash also contends that there was insufficient evidence to convict him of possession with intent to distribute. His claim, that possession of five pounds of marijuana is consistent with personal use, is, as the district court found, simply unbelievable.

Nash has asked us to construe the meaning of "drug trafficking crime" for the purposes of § 924(c)(2). Our analysis begins with the plain language of the statute. *Indiana Port Comm'n v. Bethlehem Steel Corp.*, 835 F.2d 1207, 1210 (7th Cir.1987). "When we find the terms of a statute unambiguous, judicial inquiry is complete...." *Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981). Given the plain meaning of this statute, our inquiry here is necessarily short. The operation of § 924(c)(2) requires that the defendant be convicted of a crime *involving* the distribution of a controlled substance. Before actual distribution can occur, the defendant must obtain possession of a controlled substance with the requisite intent. Because possession with intent to distribute is a necessary step in the distribution process, it is a crime involving distribution within the plain meaning of the statute. Our analysis need go no further. However, we do note that this conclusion is consistent with the decisions reached by both the Fourth and Eighth Circuits. *United States v. James*, 834 F.2d 92 (4th Cir.1987); *United States v. Matra*, 841 F.2d 837 (8th Cir.1987). *See also United States v. Cruz*, 805 F.2d 1464, 1475 n. 12 (11th Cir.1986), *cert. denied*, 481 U.S. 1006, 107 S.Ct. 1631, 95 L.Ed.2d 204 (1987) ("Our decision ... does not preclude the conviction of drug traffickers for the crime[ ] of possessing narcotics with intent to distribute....").

The conviction of the defendant, Kenneth Nash, is therefore affirmed.

AFFIRMED.