Strafford
No. 90-296

THE STATE OF NEW HAMPSHIRE

v.

ROBERT DODIER

December 11, 1991

*John P. Arnold,* attorney general (*Susan G. Morrell,* assistant attorney general, on the brief and orally), for the State.

*James E. Duggan,* chief appellate defender, of Concord, by brief and orally, for the defendant.

JOHNSON, J. The defendant was charged with the felony of possession of cocaine and the misdemeanor of possession of marijuana. RSA 318-B:2, :26. Prior to trial, the defendant moved to suppress the evidence of drugs seized from his vehicle, and the Superior Court (*Dickson,* J.) denied the motion. The defendant was then found guilty on both charges, based upon an agreed statement of facts, and the Trial Court (*Nadeau,* J.) imposed suspended sentences in both cases,

fines, and probation. The defendant appeals his convictions on the grounds (1) that the police lacked probable cause to search the vehicle, and (2) that the cocaine indictment, returned eighty-three days after his arrest, should have been dismissed pursuant to *State v. Hastings*, 120 N.H. 454, 417 A.2d 7 (1980). We hold that there was no probable cause to search the vehicle, and therefore reverse the conviction. As to the State's failure to indict in accordance with the rule of *Hastings*, we hold that the defendant's motion to dismiss was properly denied.

On Saturday, September 9, 1989, at about 1:00 a.m., Dover police officer Thomas Stinglen was on foot patrol when he noticed two men sitting in a pick-up truck parked in a parking lot. Officer Stinglen did not observe the men doing anything to indicate they had just arrived or were leaving, so he decided to approach the vehicle "just to inquire as to why they were sitting there." As Officer Stinglen approached the vehicle, he observed the passenger look at him and then back toward the driver, and then move forward quickly "as though moving something in a hurry." Officer Stinglen went up to the passenger's side of the truck and questioned the occupants in a general way. While he was standing there, Officer Stinglen noticed that the passenger became somewhat nervous. He also noticed that the passenger had something in his left hand. Officer Stinglen testified:

> "He had his hand clenched in a fist, and there was something white sticking out between the thumb and the forefingers. I asked him what it was, and he quickly moved his hand down to his left side by the seat. It was there for a second, and he brought it back up and said, 'Oh, nothing.'"

Stinglen told the passenger to get out of the vehicle and then leaned into the vehicle and found a rolled up $10 bill on the seat where the passenger had placed his hand. Stinglen then looked around the truck and noticed a white powdery substance that had spilled on the floor, mostly on the driver's side. He ordered the driver, Robert Dodier, to get out of the truck. Stinglen then conducted a search of both men, and found a three-inch drinking straw on one of them. He then proceeded to search the truck, and found a small bindle of white powder on the driver's side and a box of marijuana on the dashboard.

Initially, we consider the defendant's argument that the officer lacked probable cause to conduct a limited search for weapons. The defendant does not contest that the police officer had the right to approach the car and question him and the passenger. The trial court

improperly relied on RSA 644:6 and *United States v. Ross*, 456 U.S. 798 (1982), for its decision not to suppress the evidence.

■ We begin our analysis with the trial court's reliance on *Ross* for upholding the search of the vehicle. *Ross* is not authority for validating the search conducted in this case. In *Ross* the issue was whether a warrantless search of a vehicle that had been stopped by police, who had probable cause to believe the vehicle contained contraband, could extend to closed containers found within the vehicle. Such a search was permitted. However, in this case the police lacked probable cause to believe that the vehicle contained contraband, and the search was impermissible.

RSA 644:6 does not provide a justification for the officer's initial search of the passenger compartment. RSA 644:6 in part states:

"I. A person commits a violation if he knowingly appears at a place, or at a time, under circumstances that warrant alarm *for the safety of persons or property* in the vicinity. Circumstances which may be considered in determining whether such alarm is warranted include, but are not limited to, when the actor . . .

(b) Manifestly endeavors to conceal himself or any object."

(Emphasis added.)

Here, one of the circumstances to be considered in determining "whether alarm is warranted" was present because of the passenger's furtive gesture in placing the object in his hand beside the seat. However, we do not find that this furtive gesture alone warranted alarm "for the safety of persons or property." There was no indication that the two men intended to commit a crime which threatened public safety, nor was there any indication they intended to leave the truck. Without further corroborating evidence, the officer was unreasonable in concluding that the two men threatened public safety.

■ Furthermore, Officer Stinglen failed to comply with paragraph II of RSA 644:6, which provides:

"Prior to any arrest under this section, unless flight or other circumstances make it impossible, a law enforcement official shall afford the actor the opportunity to dispel any alarm which would otherwise be warranted, by requesting him to identify himself and give an account for his presence and conduct. Failure to identify or account for oneself, absent other circumstances, however, shall not be grounds for arrest."

Officer Stinglen did not afford the defendant the opportunity to dispel alarm. His line of questioning did not go to the identity and presence of the two men, but instead was directed toward the identity of the object the passenger placed by the seat. Officer Stinglen searched the truck before he gave the defendant the opportunity to acquit himself as required by RSA 644:6, II.

■ The State contends that Officer Stinglen had a reasonable belief that the defendant or his passenger had a weapon, based on the totality of the circumstances, and hence could properly search the vehicle. A police officer may conduct a limited search of the passenger compartment of a vehicle for the purpose of detecting a weapon, if the officer possesses a reasonable suspicion based on "specific and articulable facts which . . . reasonably warrant the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." *Michigan v. Long*, 463 U.S. 1032, 1049 (1983) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)).

Here, the State relies on the passenger's furtive gesture, and the officer's observation of something white sticking out between the passenger's thumb and forefinger, as the basis for the officer's articulable suspicion. The officer had no prior information that either man was armed. He did not see a weapon and had no information that the passengers might be about to commit an armed offense. All he saw was "something white" sticking out between the thumb and forefinger of the passenger. The officer testified, "I didn't know what it was, some type of contraband or weapon or whatever." Interestingly, the officer searched the vehicle *before* searching the individuals. It is inconceivable that the officer, if he was indeed concerned about the individuals' possessing weapons, would not have frisked the individuals first and then searched the vehicle. Moreover, the size of the object, as testified to by Officer Stinglen, is a strong indication that the object held by the passenger was not a weapon. We find that the officer lacked specific and articulable facts that would have warranted a reasonable belief that the men were dangerous or had weapons.

We opt to decide this case under the New Hampshire Constitution, using federal cases only as guidance. The facts of the instant case should be contrasted to those in *Long supra*, where the police saw a knife in plain view on the floor. The police officer, in that situation, could certainly be concerned about his safety. The State urges us to follow *United States v. Nash*, 876 F.2d 1359 (7th Cir.), *cert. denied*, 110 S. Ct. 1148 (1989). In that case the officer observed a furtive

gesture as the police car pulled up behind the defendant. The court stated, "A reasonable interpretation of *this* furtive gesture was that the defendant was hiding a gun, thus giving [the officer] cause to be concerned about his safety." (Emphasis added.) In addition, the defendant had a jacket tucked under his lap and stretched out over the floor of the front seat. The jacket appeared to be covering an area in which the defendant had hidden something when he made the "furtive gesture." The court in *Nash* observed that these two facts, the furtive gesture and the position of the jacket, warranted the officer's belief "that a search was necessary for his safety." *Nash, supra* at 1361.

In this case the officer lacked specific and articulable facts which, taken together with the rational inferences from those facts, would reasonably warrant the officer's believing that the defendant and his passenger were dangerous, or even that they possessed contraband. Hence, the search of the vehicle was improper. In several cases, a furtive gesture has been the factor that tipped the balance in favor of the State when combined with other observations. In *State v. Maguire*, 129 N.H. 165, 523 A.2d 120 (1987), an officer saw the defendant holding a plastic vial and then observed the defendant jam the vial into his pockets. The observation of an item that could be contraband, combined with the furtive gesture, gave rise to probable cause. Likewise in *State v. Ruffing*, 127 N.H. 370, 499 A.2d 1351 (1985), the police observed the defendant attempting to grind hand-rolled cigarettes into the carpet, and the court upheld the subsequent search of the apartment. In both of these cases, the furtive gesture corroborated the officer's initial suspicion based on his observation. Without the furtive conduct, there would have been no probable cause for a search.

Likewise, in *State v. Ball*, 124 N.H. 226, 471 A.2d 347 (1983), we held that mere observation of a hand-rolled cigarette did not establish probable cause unless there were additional corroborating facts, such as "that the defendant made a furtive gesture in an attempt to conceal the cigarette . . . ." *Ball, supra* at 236, 471 A.2d at 353. In this case, we are confronted with facts which are opposite to those found in *Ball*. Here, there was a furtive gesture, but no initial observation of any recognizable object that gave rise to a suspicion of contraband. As we discussed above, the officer's observation of the object held between the passenger's fingers was not definite enough to permit the conclusion that it was a weapon, nor was the size of the object consistent with the conclusion that it was a weapon.

The facts of this case are similar to those in *Gallik v. Superior Court of Santa Clara County*, 489 P.2d 573 (Cal. 1971). In particular, the police officer's testimony in each case is practically identical in substance. In that case, the officer saw the defendant sitting in a car parked illegally. As he approached, the officer saw the defendant bend down to the right. He then ordered the defendant out of the car and patted him down for weapons, finding nothing. At that point, the officer searched under the front seat and found marijuana. The officer testified that "[the furtively hidden object] could have been a gun or could have been some other type of contraband." *Id.* at 574. The court rejected the State's argument that the search was justified as a precautionary search for weapons.

> "'Just as the questioning officer in an ordinary traffic violation case cannot reasonably expect to find contraband in the offender's vehicle, so also he cannot reasonably expect to find weapons. To allow the police to routinely search for weapons in all such instances would likewise constitute an intolerable and unreasonable intrusion into the privacy of the vast majority of peaceable citizens who travel by automobile. It follows that a warrantless search for weapons, like a search for contraband, must be predicated in traffic violation cases on specific facts or circumstances giving the officer reasonable grounds to believe that such weapons are present in the vehicle he has stopped.'"

*Id.* at 577 (quoting *People v. Superior Court of Yolo County*, 478 P.2d 449 (1970)). The requisite grounds for a search of the vehicle are not furnished by a mere furtive gesture. *Gallik, supra* at 577.

■ We find that Officer Stinglen conducted the search of the passenger compartment of the truck to satisfy his curiosity about the nature of the object, and to test his dual theories about what it might be. A search "prompted by a general curiosity to ascertain what, if anything, was within the defendant's vehicle is manifestly exploratory in nature, and violates both the letter and the spirit of the Fourth Amendment." *People v. Superior Court of Yolo County*, 478 P.2d at 465 (quoting *People v. Cruz*, 264 Cal. App. 2d 437 (1968)). Officer Stinglen's search, based on a furtive gesture and an inconclusive observation, was manifestly exploratory in nature, and a violation of part I, article 19 of the New Hampshire Constitution.

For the same reasons that the officer could not say that the object was a weapon, he could not say that it was drug paraphernalia or contraband either. He did not see the object well enough to distin-

guish between two vastly different things. Although the size of the object was more consistent with the conclusion that it was contraband, the officer did not draw that conclusion. Instead, he entertained the notion that it might be "some type of contraband or weapon or whatever," which means that the object may have been perfectly legal. The officer's suspicion was far too vague to constitute probable cause.

 The defendant concedes in his brief that a definite observation of drugs or drug paraphernalia combined with a furtive gesture would have constituted probable cause. The State concedes that until the officer found the rolled-up bill, he did not have probable cause to search the car for drugs. Therefore, at the time the officer observed the furtive gesture, he lacked probable cause to search the car for drugs. The trial court's decision not to suppress the evidence obtained as a result of the illegal search was error.

We now turn to the defendant's contention that the case should have been dismissed because the indictment was returned eighty-three days after his arrest. *See State v. Hastings*, 120 N.H. 454, 417 A.2d 7. The State's explanation for the delay was administrative error. The police submitted both the cocaine found on the floor and the substance in the bindle to the State laboratory immediately after the arrest. The lab analyzed only the cocaine found on the floor, because the Dover police failed to state a preference or request that each of the amounts be analyzed. The prosecutor wanted the substance in the bindle, which was located next to the driver, tested also. He requested that the Dover police obtain such an analysis, but this second request was not submitted until December 1, 1989, and the results were not returned until sometime in January. In the meantime, the grand jury indicted the defendant on November 30, "even though the additional analysis had still not been performed as requested."

The defendant contends that since the second analysis obviously was not necessary for an indictment, as the indictment was obtained without it, the delay associated with waiting for the results of the second analysis was not justifiable. The prosecutor wanted to wait for evidence that would strengthen the State's case, but was not necessary for an indictment. We hold that the prosecutor's decision to delay the indictment was reasonable. We have never held that a delay must be necessary in order to be excusable.

■ In addition, there is evidence to support the State's position that the prosecutor made the request for analysis in a timely manner, and that the Dover police were negligent in failing to submit the request until after the indictment. We do not feel the Dover Police Department's tardiness should be imputed to the State in this instance, where the prosecutor acted in a timely manner and where the evidence the State was awaiting would potentially have strengthened the State's case.

■■ "While the sixty-day Hastings rule is not to be lightly regarded, *State v. Hughes*, 123 N.H. 66, 67, 455 A.2d 1069, 1070 (1983), it should not be mechanically applied so as to dismiss an indictment whenever there is a short delay in bringing the indictment." *State v. Berger*, 125 N.H. 83, 90–91, 480 A.2d 27, 31 (1984). The issue on appeal is whether the trial court abused its discretion in determining that the State's failure to indict the defendant within sixty days of the arrest was not unreasonable. *State v. Hughes*, 123 N.H. at 66, 455 A.2d at 1070. To show such an abuse of discretion, a defendant must demonstrate that the trial court's decision was clearly unreasonable and that the decision prejudiced his case. *State v. Gooden*, 133 N.H. 674, 677, 582 A.2d 607, 609 (1990).

■ The Trial Court (*Dickson*, J.) found that the State had presented valid reasons for the twenty-three-day delay, since the State desired further tests prior to seeking an indictment. *See State v. Berger, supra* at 90, 480 A.2d at 31. Further, the defendant offers no explanation as to how his case was prejudiced, and we can discern none. As a consequence, we affirm the trial court's ruling refusing to dismiss the indictment on *Hastings* grounds.

*Reversed.*

All concurred.