# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 04-1223

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * Southern District of Iowa. |
| Demarko S. Walker, | * |
| | * |
| Appellant. | * |

_____

Submitted: October 19, 2004
Filed: January 13, 2005

_____

Before MORRIS SHEPPARD ARNOLD, BOWMAN, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

After a jury convicted Demarko Walker (Walker) of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), the district court[1] entered judgment and sentenced Walker to 112 months imprisonment. Walker appeals, arguing the district court erroneously admitted certain testimony at trial, and erroneously denied Walker's post-trial motions for judgment of acquittal or for a new trial. We affirm.

_____

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

## I.    BACKGROUND

On May 13, 2003, Officer Chad Cornwell (Officer Cornwell) of the Des Moines (Iowa) Police Department (DMPD) pulled over a Mercury Grand Marquis (Mercury) for speeding, for not displaying a front license plate, and for having a cracked windshield. Officer Cornwell talked with the driver of the Mercury, Otto Gipson (Gipson), who had no identification and said his driver's license was suspended. Officer Cornwell then asked Walker, who was the front-seat passenger and only other occupant, to identify himself. Walker identified himself as John Smith, and gave Officer Cornwell a false date of birth and a false social security number. While Officer Cornwell returned to his police cruiser to check the information given to him, two other DMPD police officers arrived.

Officer Cornwell informed one of the newly arrived officers, Officer Stewart Barnes (Officer Barnes), that Gipson was driving on a suspended license, the passenger may have provided false information, and a beer bottle was on the floorboard between the driver and passenger. Officer Barnes approached the Mercury and asked Gipson to step out of and behind the vehicle. While another officer kept Gipson under observation at the rear of the vehicle, Officer Barnes talked to Walker, who remained in the passenger seat. Officer Barnes asked Walker a few questions, and Walker still did not provide his real identity, age or date of birth. Officer Barnes removed the beer bottle from the Mercury and informed Walker there was a problem.

Officer Cornwell then learned Walker had given false information, informed Officer Barnes of this finding, and approached the passenger-side of the Mercury. As Officer Cornwell approached the vehicle, Officer Barnes told Officer Cornwell that Walker needed to be removed from the vehicle. Walker then slid across to the driver's seat, put the car in gear, and sped away. Officer Barnes grabbed onto the vehicle as it sped off, and was dragged to the next intersection while yelling at Walker to stop the vehicle. As the Mercury approached the intersection, Walker

slowed down and told Officer Barnes to let go. When Walker sped up again, Officer Barnes let go and hit the pavement.

Lieutenant Leesa Shoemaker (Lieutenant Shoemaker), a veteran of over eighteen years with the Polk County Sheriff's Office, received an emergency radio broadcast that a DMPD officer was down, and that the fleeing Mercury was in close proximity to her patrol vehicle. When Lieutenant Shoemaker spotted the Mercury swerving in traffic, she followed it in her marked Ford Explorer (Explorer). Lieutenant Shoemaker engaged her emergency lights and siren, but the Mercury accelerated, running stop signs and a stop light. Walker drove the Mercury 70 miles per hour through a residential area with a speed limit of 25 miles per hour. While driving between 60 and 70 miles per hour, Walker twice leaned over to the passenger-side of the vehicle, causing Lieutenant Shoemaker to lose sight of Walker.

Walker then ran a red light at another intersection and struck a van. Walker exited the Mercury and fled on foot. Lieutenant Shoemaker continued to pursue Walker in her Explorer. After Walker ran behind a residence, Lieutenant Shoemaker exited her Explorer and pursued Walker on foot. Finally, Lieutenant Shoemaker caught Walker and forced him to the ground. Lieutenant Shoemaker held Walker until DMPD officers arrived to assist, at which time she transferred custody of Walker to them.

Lieutenant Shoemaker returned to the intersection where Walker collided with the van. Based on Walker's movements during the chase, Lieutenant Shoemaker testified she believed Walker had a gun in the Mercury. When Lieutenant Shoemaker reached the Mercury, she told a DMPD officer "there's a gun in that car." The DMPD officer and Lieutenant Shoemaker then searched the Mercury, finding a firearm in the front passenger-side "between the seat frame where the seat bolts into the floorboard and the floorboard." The gun was fully loaded, but contained no

usable fingerprints. An empty beer bottle and a portable CD player were found on the right front floorboard.

Shortly after Walker was arrested, DMPD Detective Terry Mitchell (Detective Mitchell) interviewed Walker. Walker told Detective Mitchell he owned the Mercury and also admitted lying about his name, because he believed there was an arrest warrant out on him. Walker said an officer bent down to look under the seat when the officer told Walker his age and date of birth did not add up. Walker told Detective Mitchell he then moved behind the wheel and drove off, because he had given false information and because he thought he was going to be arrested based on his belief there was an outstanding arrest warrant on him. According to Walker's parole officer, an arrest warrant had been issued. Walker asserted he stopped at the intersection and asked the police officer who was hanging onto the Mercury to please let go, which the officer did. Finally, Walker told Detective Mitchell no guns or contraband were in the Mercury.

Walker had purchased the Mercury a day earlier from Clifton Easley (Easley), who had known Walker for five years. Easley's fiancee is Walker's first cousin. Easley had obtained the Mercury from a used-car business ten days earlier. After acquiring the Mercury, Easley thoroughly cleaned the interior, including vacuuming and shampooing the carpet. Easley also repaired the floorboard. Easley claimed he never saw a firearm inside the Mercury. Easley previously had been convicted of aggravated domestic abuse with the intent to inflict serious injury while displaying a weapon.

The government charged Walker with being a felon in possession of a firearm. The parties stipulated (1) the firearm was a functional Baikal/Imez .380 pistol that had been manufactured outside of Iowa and had traveled in interstate commerce, and (2) Walker had been convicted of a felony. Walker made a pretrial motion in limine to preclude Lieutenant Shoemaker from testifying she believed Walker may have

been reaching for a firearm while leaning toward the passenger seat and she told another officer at the scene "there's a gun in that car." Walker argued such testimony involved speculation and hearsay. The district court denied the motion.

At trial, Gipson, who is Walker's brother-in-law, testified he did not know a firearm was in the Mercury, and he did not see a firearm in the Mercury. Andre Bomar, who is Walker's friend and had ridden in the Mercury, testified he never saw a firearm in the Mercury nor had he and Walker ever discussed a firearm. When Lieutenant Shoemaker testified at trial that she told another police officer at the scene "there's a gun in that car," Walker objected on the ground the statement was based on speculation, but the district court overruled the objection and allowed the jury to consider the statement.

After a two-day trial, a jury found Walker guilty. During trial and after trial, Walker moved for judgment of acquittal, arguing the government had not proved beyond a reasonable doubt Walker "had the intent to exercise dominion and control over a firearm, which is an essential element of the charge." Walker also contended "[t]here hasn't been any evidence that he had knowledge of [the firearm's] presence in the vehicle." In the alternative, Walker moved for a new trial. Denying Walker's motions for judgment of acquittal and for a new trial, the district court entered judgment against Walker and sentenced him to 112 months imprisonment.

On appeal, Walker contends he is entitled to judgment of acquittal because "the evidence [at trial] was insufficient for a rational jury to find beyond reasonable doubt that he knowingly and intentionally possessed the handgun." In a similar vein, Walker contends the district court abused its discretion in denying Walker's motion for a new trial, because the jury's verdict was against the weight of the evidence. Finally, Walker contends the district court abused its discretion by allowing Lieutenant Shoemaker to testify at trial "on the ultimate issue of fact," that she

-5-

believed Walker was leaning over to the Mercury's passenger-side to retrieve a firearm.

## II. DISCUSSION

### A. Sufficiency of the Evidence

Walker argues the district court erroneously denied his motion for judgment of acquittal, because there was insufficient evidence to support the guilty verdict for being a felon in possession of a firearm. Walker "confronts a high hurdle with this argument, as we must employ a very strict standard of review on this issue." United States v. Cook, 356 F.3d 913, 917 (8th Cir. 2004). We "view the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." Id. (citation omitted). "We may reverse only if no reasonable jury could have found [Walker] guilty." Id.

To convict Walker under 18 U.S.C. § 922(g)(1),[2] the government had to prove beyond a reasonable doubt: "(1) [Walker] had previously been convicted of a crime punishable by a term of imprisonment exceeding one year; (2) [Walker] knowingly possessed a firearm; [and] (3) the firearm has been in or has affected interstate commerce." United States v. Maxwell, 363 F.3d 815, 818 (8th Cir. 2004). The parties stipulated to the first and third elements, thereby requiring the government to prove only that Walker knowingly possessed a firearm.

The government could prove Walker knowingly possessed the firearm if he had actual or constructive possession of the firearm, and possession of the firearm could

---

[2]Section 922(g)(1) makes it "unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate . . . commerce."

have been sole or joint. United States v. Eldridge, 984 F.2d 943, 946 (8th Cir. 1993). "Constructive possession of the firearm is established if the person has dominion over the premises where the firearm is located, or control, ownership, or dominion over the firearm itself." United States v. Boykin, 986 F.2d 270, 274 (8th Cir. 1993). When firearms have been found in a vehicle's trunk, our court has stated a defendant "had dominion and control over the firearms because he had control of the keys to the trunk of the car." Eldridge, 984 F.2d at 946; see also United States v. Hiebert, 30 F.3d 1005, 1009 (8th Cir. 1994) (affirming a felon-in-possession conviction because the defendant "had control over the rifle, as it was found in the vehicle that he was driving").

Sufficient evidence supports the jury's conviction. Walker owned the Mercury, and he was initially seated in the front passenger seat, under which the firearm was later discovered. Gipson, who was driving Walker's Mercury, testified he knew nothing about a firearm in the vehicle. Easley extensively cleaned the Mercury before Walker purchased it. No firearm was found during the cleaning. When Officers Barnes and Cornwell asked Walker for his identification, Walker lied about his name, date of birth, age, and social security number. Walker fled police after an officer leaned into the vehicle and appeared to search under the front seat where the firearm was concealed. Finally, Walker's actions during the car chase are equally incriminating, as Walker twice leaned over to the front passenger seat that concealed the firearm. See United States v. Flenoid, 718 F.2d 867, 868 (8th Cir. 1983) (per curiam) (affirming felon-in-possession conviction based only on the arresting officer's testimony he saw the defendant "bend down and reach under the car seat" where the firearm was actually found, even though the car's passenger testified the defendant did not reach beneath the seat and no one had ever seen the defendant actually possess the firearm).

Walker contends all of this evidence can be explained in a way that supports his claim of innocence. However, the jury rejected Walker's explanations. We will

not disturb the jury's reasonable verdict. See United States v. Anderson, 78 F.3d 420, 422 (8th Cir. 1996) ("The evidence need not exclude every reasonable hypothesis of innocence, and we may not disturb the conviction if the evidence rationally supports two conflicting hypotheses.").

### B. Motion for a New Trial

Walker contends the district court abused its discretion in denying the motion for a new trial, again arguing the weight of the evidence does not support the jury's guilty verdict. Federal Rule of Criminal Procedure 33(a) authorizes a district court to "vacate any judgment and grant a new trial if the interest of justice so requires."

> When a motion for new trial is made on the ground that the verdict is contrary to the weight of the evidence, the issues are far different from those raised by a motion for judgment of acquittal. The question is not whether the defendant should be acquitted outright, but only whether he should have a new trial. The district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses. If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury. This authority should be exercised sparingly and with caution; nevertheless, the trial court has wide discretion in deciding whether to grant a new trial in the interest of justice.

United States v. Lincoln, 630 F.2d 1313, 1319 (8th Cir. 1980). The district court considered Walker's motion for a new trial and, in exercising its wide discretion, decided the interest of justice did not require a new trial. Not surprisingly, an appellate court reviews the district court's "denial of a motion for a new trial for abuse of discretion and will reverse only if the evidence weighs heavily enough

against the verdict that a miscarriage of justice may have occurred." United States v. Red Elk, 368 F.3d 1047, 1053 (8th Cir. 2004) (citation omitted).

We exert little effort in concluding the district court did not abuse its wide discretion in denying Walker's motion for a new trial. Sufficient evidence supports the jury's verdict. Walker's conviction does not evince a serious miscarriage of justice such that we must reject the jury's verdict or the district court's sense of justice.

### C.    Officer's Testimony

Walker contends "[t]he district court abused its discretion in allowing Lieutenant Shoemaker to speculate that [Walker] was reaching for a gun during their high-speed car chase." Walker then maintains the district court's erroneous evidentiary decision prejudiced him, arguing Lieutenant "Shoemaker's unfounded opinion was the only evidence that [Walker] had knowledge of the weapon's presence and the intention to exercise dominion and control over it." We review a district court's evidentiary decisions under an abuse of discretion standard,[3] but, "[e]ven if the district court erred in admitting the evidence, we will not reverse if the admission of the evidence was harmless." United States v. Velazquez-Rivera, 366 F.3d 661, 666 (8th Cir. 2004); see Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."). We see no reason to discuss the niceties of the district court's rulings on Walker's motion in limine and objection at trial. No obvious error of law or abuse of discretion is apparent. Instead, we focus on the impact of the court's rulings, and conclude any error was harmless.

---

[3]Although not critical to our holding in this case, our court recently has explained that "[w]e review de novo the district court's interpretation and application of the rules of evidence, and review for an abuse of discretion the factual findings supporting its evidentiary ruling." United States v. Smith, 383 F.3d 700, 706 (8th Cir. 2004) (citing United States v. Blue Bird, 372 F.3d 989, 993 (8th Cir. 2004)).

We reach this conclusion based on our firm belief Lieutenant Shoemaker's testimony that Walker reached for a gun or had a gun in his car was inconsequential to the jury's verdict. Had the district court precluded Lieutenant Shoemaker from testifying she told another officer "there's a gun in that car" or that she believed Walker had been reaching for a gun during the high-speed chase, the jury was still presented with evidence more than sufficient to convict Walker. The jury heard evidence that (1) Walker owned the Mercury, which recently had been detailed with no firearm being found; (2) Gipson, the driver, knew nothing about a firearm being in the vehicle; (3) Walker lied about his name, age, date of birth and social security number; (4) Walker, upon seeing a police officer look under the front seat, moved to the driver's seat and fled, leading Lieutenant Shoemaker on a dangerous, high-speed car chase; and (5) during the chase, Walker twice leaned over to the front passenger seat where the firearm was concealed. The record does not support the conclusion the disputed portions of Lieutenant Shoemaker's testimony made the case against Walker.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.[4]

––––––––––––––––––––––––––

––––––––––––––––––––––––––

[4]Walker has requested leave to file a supplemental brief on the applicability of Blakely v. Washington, 124 S. Ct. 2531 (2004), which we have denied. However, we reserve ruling on the applicability of the Blakely reasoning to this case until the Supreme Court issues its opinions in United States v. Booker and United States v. Fanfan.