# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 11-1156/1287

_____

United States of America,     *
                         *

      Appellee/Cross-Appellant,   *
                         *   Appeals from the United States

v.                         *   District Court for the
                         *   District of Minnesota.

Lyons Lonnie Bynum,      *
                         *

      Appellant/Cross-Appellee.   *

_____

Submitted: October 18, 2011
Filed: February 28, 2012

_____

Before MELLOY, BEAM, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

After a jury trial, Lyons Lonnie Bynum was convicted of unlawful possession of a firearm by a previously convicted felon, *see* 18 U.S.C. § 922(g)(1), and sentenced to 120 months' imprisonment. Bynum appeals his conviction, and the Government cross-appeals the sentence. We affirm the conviction, vacate the sentence, and remand for resentencing.

## I. BACKGROUND

The evidence at trial was as follows. Bynum telephoned his girlfriend Stephanie Anderson at approximately 1:00 a.m. on July 16, 2009, and asked her for a ride. According to Anderson, when she met him, Bynum showed her that he was carrying a handgun. Anderson allowed Bynum to stay at her home that night but insisted that he not bring the gun into her home, suggesting that he leave it in the trunk of her car instead. The next morning, Anderson allowed Bynum to leave the gun in a box in her laundry room while he was at work. Later that day and again on subsequent days, Anderson asked Bynum to retrieve the gun from her house. Six days later, Bynum still had not retrieved the gun. Anderson contacted the police about the gun, and the responding officers took possession of it.

The next day, at the request of an officer, Anderson contacted Bynum to arrange for him to retrieve the gun. The police recorded the telephone call, and the Government introduced the recording as evidence at trial. Anderson testified that Bynum had previously told her not to use the word "gun" over the telephone because she did not know who might be listening. During the phone call, Bynum and Anderson referred to the gun obliquely as "it" or "shit." Anderson agreed to leave "it" in a bag under the driver's seat of her car in a mall parking lot and told Bynum to pick it up between 4:00 p.m. and 5:00 p.m. Bynum initially rejected Anderson's plan, preferring to wait until after sundown. When Anderson threatened that she would throw "it" in the river if Bynum did not retrieve it, Bynum acquiesced, saying, "Alright then . . . . Be there."

The officers secured a lock to the gun, put the gun in a paper bag, and placed the bag underneath the driver's seat of Anderson's car. The gun weighed approximately five pounds. Bynum arrived at the mall parking lot at the appointed time and visually scanned the area before entering a nearby store. After about two minutes, Bynum exited the store, walked to Anderson's car, and sat in the passenger's

seat. The officers observed him reach underneath the driver's seat and then exit the vehicle holding the paper bag containing the gun. When he saw the officers approaching, Bynum began to run and tossed the paper bag toward a nearby car. The officers apprehended Bynum and retrieved the bag with the gun.

A grand jury indicted Bynum for possessing a firearm as a convicted felon "[o]n or about July 23, 2009," the day he was arrested in the parking lot. The indictment alleged that Bynum had prior Minnesota state convictions for First Degree Burglary, selling a narcotic drug in violation of Minn. Stat. § 152.023, subdiv. 1(1) ("Third Degree drug conviction"), and selling a controlled substance in violation of Minn. Stat. § 152.024, subdiv. 1 ("Fourth Degree drug conviction"). Bynum entered a stipulation pursuant to *Old Chief v. United States*, 519 U.S. 172 (1997), stating that he had been convicted of a qualifying felony "prior to July 23, 2009, . . . and was thus prohibited from possessing a firearm." Bynum proposed, and the district court gave, jury instructions stating that the jury could consider the "prior conviction" element of the offense as proven because of the *Old Chief* stipulation. As a result, the Government introduced no other evidence of any qualifying convictions.

At the close of the Government's case, Bynum moved for a judgment of acquittal, which the district court denied. After the jury found Bynum guilty, the United States Probation Office prepared a presentence investigation report in which it concluded that Bynum qualified for a 180-month mandatory minimum sentence under the Armed Career Criminal Act ("ACCA") based on the three prior convictions alleged in the indictment. Bynum objected to this classification, arguing that the Third and Fourth Degree drug convictions were not qualifying predicate offenses because, under Minnesota law, both drug sale convictions could be based merely on an *offer* to sell a controlled substance.[1] The district court held that an offer to sell a

---

[1]Bynum does not dispute that his Minnesota state burglary conviction is a predicate ACCA offense.

controlled substance is not a qualifying ACCA predicate offense and, after applying the modified categorical analysis, found that Bynum's Third Degree drug conviction did not qualify as an ACCA predicate offense. Thus, the district court found that Bynum was not an armed career criminal under the ACCA and sentenced him to a 120-month term of imprisonment. Bynum timely appeals his conviction, and the Government timely appeals Bynum's sentence.

## II.    DISCUSSION

### A.    Sufficiency of the Evidence

Bynum alleges that the evidence is insufficient to support the jury verdict. We will affirm unless, viewing the evidence in the light most favorable to the Government and accepting all reasonable inferences that may be drawn in favor of the verdict, no reasonable jury could have found Bynum guilty. *See United States v. Walker*, 393 F.3d 842, 846 (8th Cir. 2005). To convict Bynum of unlawful possession of a firearm as a previously convicted felon, the Government was required to prove beyond a reasonable doubt that Bynum knowingly possessed a firearm after a qualifying felony conviction. *See id.* Bynum argues that the Government failed to prove that he knew there was a gun in the bag he retrieved from Anderson's car on July 23, 2009. Bynum relies on a police officer's testimony that suggested that Bynum would have known the police were involved if he had seen that the gun in the paper bag had a lock on it. Bynum contends that the jury was required to infer from this testimony that he never looked in the bag, never saw the gun, and thus could not have knowingly possessed the gun in the bag.

The Government presented more than sufficient evidence from which a reasonable jury could infer that Bynum was aware that there was a gun in the paper bag he was carrying on July 23, 2009. Anderson testified that Bynum had the gun when she picked him up, that he left it at her house, and that she repeatedly asked him

-4-

to retrieve it. She further testified that he warned her not to call it a gun over the telephone. Although Anderson and Bynum did not use the word "gun" on the recorded telephone call, they repeatedly referred to a single item ("it") in a fashion consistent with that item being a gun. Bynum was very concerned about retrieving this item and responded forcefully when Anderson threatened to throw "it" in the river. He also was cautious about retrieving it, repeatedly asking Anderson to bring it to him and initially refusing to retrieve it from the parking lot until after dark. Moreover, after Bynum retrieved a five-pound item in a paper bag from under the seat and observed police approaching him, he fled and discarded the bag. Based on Anderson's testimony, the recorded phone call, and Bynum's behavior immediately before and after he retrieved the bag, a reasonable jury could infer that Bynum knew he had retrieved a gun from Anderson's car. *See United States v. Maloney*, 466 F.3d 663, 666-67 (8th Cir. 2006) (holding that a reasonable jury could infer knowing possession of a firearm despite the absence of evidence that the defendant had looked inside a bag where the firearm was found because he was familiar with items stored in the car near the bag, fled to avoid being associated with "things" in the car, and attempted to avoid police apprehension). Bynum's contention that the evidence was insufficient because Anderson's testimony lacked credibility is unavailing because "[a] jury's credibility determinations are well-nigh unreviewable." *United States v. Hodge*, 594 F.3d 614, 618 (8th Cir.), *cert. denied*, 560 U.S. ---, 130 S. Ct. 3401 (2010). Moreover, as detailed above, significant evidence corroborates her testimony. We conclude that the evidence was sufficient to sustain Bynum's conviction.[2]

---

[2]Bynum also contends that the Government failed to prove he was a convicted felon during his earlier putative possession of the gun on July 16 because his *Old Chief* stipulation only specifies he was convicted "prior to July 23" and because the Government never introduced any evidence of his earlier felony convictions. Because we conclude that there is sufficient evidence of knowing possession of a firearm on July 23, we need not reach this issue. We note, however, that an *Old Chief* stipulation must have "equivalent" probative value to the "fuller record" proffered by the Government to justify the restriction imposed by the stipulation on prosecutorial

**B.      ACCA Sentencing Enhancement**

In its cross-appeal, the Government contends that the district court erred in failing to sentence Bynum as an armed career criminal under the ACCA, which would have required a mandatory minimum 180-month sentence.  The Government argues that Bynum's Third and Fourth Degree drug convictions are categorically "serious drug offenses" under 18 U.S.C. § 924(e), qualifying Bynum for the ACCA sentencing enhancement, because offering to sell, give away, barter, deliver, exchange, distribute, or dispose of drugs "involves" distribution of a controlled substance within the meaning of 18 U.S.C. § 924(e)(2)(A)(ii).  We review *de novo* whether a prior conviction constitutes a serious drug offense under § 924(e). *United States v. Mason*, 440 F.3d 1056, 1057 (8th Cir. 2006).

The ACCA defines "serious drug offense," in relevant part, as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . , for which a maximum term of imprisonment of ten years or more is prescribed by law[.]"   18 U.S.C. § 924(e)(2)(A)(ii).[3]  To determine whether a prior conviction qualifies as a "serious drug offense," courts generally apply a categorical approach and "look only to the fact of conviction and the statutory definition of the prior offense." *Taylor v. United States*, 495 U.S. 575, 602 (1990).  When a statute criminalizes both qualifying and

___

discretion to introduce details of the prior convictions. *See United States v. Walker*, 428 F.3d 1165, 1169 (8th Cir. 2005).  Here, the fuller record would have established that Bynum was a convicted felon on July 16, 2009.  Consistent with this view, the district court accepted the portion of Bynum's proposed jury instructions allowing the jury to deem the prior-conviction element proved based on Bynum's *Old Chief* stipulation.

[3]Bynum does not dispute that the maximum statutory penalties for violations of Minn. Stat. § 152.023 and § 152.024 meet or exceed ten years of imprisonment as required for predicate offenses under the ACCA.

non-qualifying conduct, courts apply a modified categorical approach and may consider the charging document, plea agreement, plea-colloquy transcript, or "some comparable judicial record of this information" to determine under which portion of the statute the conviction arose. *Shepard v. United States*, 544 U.S. 13, 26 (2005). Under either approach, the court must determine whether the defendant's conviction necessarily qualifies as an ACCA predicate. *See id.* at 17.

The Minnesota statute defines "sell" for the purposes of Bynum's Third and Fourth Degree drug convictions to mean "(1) to sell, give away, barter, deliver, exchange, distribute or dispose of to another, or to manufacture; or (2) to offer or agree to perform an act listed in clause (1); or (3) to possess with intent to perform an act listed in clause (1)." Minn. Stat. § 152.01, subdiv. 15a. Because the district court concluded that offering to sell drugs is not a "serious drug offense" within the meaning of 18 U.S.C. § 924(e), it applied a modified categorical approach to determine whether Bynum was necessarily convicted under the offer-to-sell part of the statute or under the actual-sale part of the statute. After reviewing the transcripts of Bynum's change-of-plea hearings, the district court concluded that Bynum's Fourth Degree drug conviction necessarily arose under the actual-sale part of the statute. However, the court was unable to eliminate the possibility that the Third Degree drug conviction arose under the offer-to-sell part of the statute, and thus it sustained Bynum's objection to the ACCA enhancement. If, as the Government argues, an offer to sell a controlled substance categorically "involves" distribution of a controlled substance within the meaning of the ACCA, then both Bynum's Third and Fourth Degree drug convictions are qualifying offenses and Bynum should have been sentenced as an armed career criminal under the ACCA.

Although the question of whether an offer to sell drugs "involves" drug distribution within the meaning of the ACCA appears to be one of first impression in this circuit, we are not the first circuit to confront this question. In *United States v.*

*Vickers*, the Fifth Circuit held that a conviction for offering to sell drugs "involved" drug distribution and was thus a "serious drug offense" within the meaning of the ACCA. 540 F.3d 356, 364-66 (5th Cir. 2008). Bynum urges us to reject *Vickers* and interpret the ACCA's definition of "serious drug offense" narrowly to conform to the United States Sentencing Guidelines' definitions of "controlled substance offense" and "drug trafficking offense." The Fifth Circuit specifically refused to construe the ACCA's definition of "serious drug offense" to conform to the sentencing guidelines' definitions of "controlled substance offense" and "drug trafficking offense" under U.S.S.G. §§ 2L1.2 and 4B1.2(b). *See id.* at 364-66 & n.3 (citing *United States v. Price*, 516 F.3d 285 (5th Cir. 2008)). The Fifth Circuit reasoned that the guidelines' definitions limit the relevant enhancements' applicability to offenses that "prohibit" the manufacture, distribution, and possession of drugs, whereas the ACCA requires only that predicate offenses "involve" the manufacture, distribution, or possession of drugs. *See id.*

We similarly reject Bynum's argument that the ACCA's definition of "serious drug offense" should be interpreted narrowly to conform to the sentencing guidelines' definitions of "controlled substance offense" and "drug trafficking offense." The sentencing guidelines expressly caution that the ACCA's definition of "serious drug offense" is "not identical to the definition[] of . . . 'controlled substance offense'" given in § 4B1.2. U.S.S.G. § 4B1.4 cmt. n.1. Unlike the sentencing guidelines, 18 U.S.C. § 924(e)(2)(A)(ii) uses the term "involving," an expansive term that requires only that the conviction be "related to or connected with" drug manufacture, distribution, or possession, as opposed to including those acts as an element of the offense. *Vickers*, 540 F.3d at 365 (quoting *United States v. Winbush*, 407 F.3d 703, 707 (5th Cir. 2005)).[4] Knowingly offering to sell drugs is sufficiently "related to or

---

[4]Other circuits also have concluded that Congress's use of the word "involving" evinces an intent to define the ACCA "serious drug offense" designation expansively. *See United States v. Gibbs*, 656 F.3d 180, 184-85 (3d Cir. 2011); *United*

connected with" drug distribution within the meaning of the ACCA because those who knowingly offer to sell drugs "intentionally enter the highly dangerous drug distribution world." *See id.* at 365-66 (quoting *Winbush*, 407 F.3d at 707). As a result, we conclude that knowingly offering to sell drugs is a "serious drug offense" under the ACCA.

Bynum contends that violation of the Minnesota offer-to-sell statute is not sufficiently "related to or connected with" drug distribution because it lacks any requirement that an offer to sell drugs "be genuine, made in good faith, or be accompanied by an actual intent to distribute a controlled substance," such that a person who offers "to sell the proverbial Brooklyn Bridge" could be subject to conviction. He argues that the ACCA limits serious drug offenses to crimes that "require intent to distribute a controlled substance, actual or constructive possession of a controlled substance, an act of distribution of a controlled substance, or any act of drug trafficking," and that because the Minnesota statute does not require actual intent to follow through on the offer violation of that statute is not a "serious drug offense" under the ACCA.

We reject Bynum's assertion that an offer to sell drugs must be "genuine, made in good faith, or be accompanied by an actual intent to distribute a controlled substance" to "involve" drug distribution. We note that a mere agreement to distribute a controlled substance, even absent some overt act in furtherance of the conspiracy, is sufficient to violate federal drug conspiracy laws, *see United States v.*

---

*States v. Williams*, 488 F.3d 1004, 1009 (D.C. Cir. 2007); *United States v. McKenney*, 450 F.3d 39, 43 (1st Cir. 2006); *United States v. King*, 325 F.3d 110, 113-14 (2d Cir. 2003); *United States v. Brandon*, 247 F.3d 186, 190 (4th Cir. 2001). In *United States v. Lachowski*, we offered a narrower definition of the term "involving" in the context of 21 U.S.C. § 853(q), but we distinguished that statute's use of the term from the term's "expansive connotations" in 18 U.S.C. § 924(e)(2). 405 F.3d 696, 698-700 (8th Cir. 2005) (quoting *King*, 325 F.3d at 113).

*Shabani*, 513 U.S. 10, 17 (1994), and thus also is sufficient to constitute a serious drug offense under the ACCA, *see United States v. McKenney*, 450 F.3d 39, 44 (1st Cir. 2006). The Texas offer-to-sell offense at issue in *Vickers* did not require that the defendant actually have any drugs to sell or even intend to obtain them. *Vickers*, 540 F.3d at 365. Nevertheless, the Fifth Circuit held that neither element was necessary for the offense to "involve" drug distribution. *Id.* at 364-66. Even if the Minnesota statute at issue here does not require that the defendant possess any drugs or have specific intent to complete the sale, *see Minnesota v. Lorsung*, 658 N.W.2d 215, 218-19 (Minn. Ct. App. 2003), so long as that defendant has intentionally made an offer to sell a controlled substance, he or she has "intentionally enter[ed] the highly dangerous drug . . . marketplace as a seller," which "is the kind of self-identification as a potentially violent person that Congress was reaching by the ACCA." *See Vickers*, 540 F.3d at 365-66. Thus, Bynum's argument fails to persuade.

We also reject Bynum's contention that whether an offense "involves" drug distribution within the meaning of the ACCA depends on whether the offense requires an offer to exchange the drugs for value as opposed to an offer to distribute them gratuitously. Bynum contends that without an "exchange of value" element to the offered transaction the defendant has not self-identified as a participant in the drug-trafficking market in a manner sufficient to justify the ACCA enhancement. To the contrary, our drug laws do not require an "exchange of value" to "involve" drug distribution. For example, federal drug distribution charges do not require an exchange for value. *See* 21 U.S.C. § 841; 21 U.S.C. § 802(8), (11); *see also United States v. Lachowski*, 405 F.3d 696, 699 (8th Cir. 2005) (stating that drug distribution is "essentially the deliverance of a product to its intended recipients"). Similarly, both conspiracy and attempt to distribute controlled substances are serious drug offenses under the ACCA, and neither offense requires an exchange for value. *See* 21 U.S.C. § 846; *United States v. Brown*, 408 F.3d 1016, 1017-18 (8th Cir. 2005) (holding that conviction under a statute making it "unlawful for any person . . . to

attempt to distribute, deliver, manufacture or produce a controlled substance" qualified as a "serious drug offense" within the meaning of 18 U.S.C. § 924(e)(2)(A)(ii) (quoting Mo. Rev. Stat. § 195.211)); *McKenney*, 450 F.3d at 40, 43-44 (holding that state law conviction for conspiracy to possess a controlled substance with intent to distribute is a "serious drug offense" because it "involves" possession with intent to distribute). We see no reason to restrict the ACCA's definition of "serious drug offenses" to only those offers to sell for which the object of the offer is an exchange of drugs for value.

In summary, we find the reasoning in *Vickers* persuasive and hold that Bynum's conviction for offering "to sell, give away, barter, deliver, exchange, distribute or dispose of" drugs, regardless of the defendant's specific intent or ability to carry out the sale, "involves" the distribution of drugs and is thus categorically a "serious drug offense" within the meaning of 18 U.S.C. § 924(e)(2)(A)(ii). Because both the actual-sale and offer-to-sell parts of the Minnesota statute are "serious drug offenses" within the meaning of the ACCA, we conclude that the district court erred in refusing to designate Bynum as a career criminal offender and by failing to sentence him accordingly.

## III.  CONCLUSION

For the foregoing reasons, we affirm the conviction, vacate the sentence, and remand for resentencing applying the ACCA enhancement.

_____