UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

United States of America

    v.

Michael Roman Burghardt

Criminal No. 17-cr-45-JL
Opinion No. 2018 DNH 150

**MEMORANDUM ORDER**

This case requires the court to assess the impact, if any, of the defendant's prior state-court drug and robbery convictions on his sentence for illegal firearm possession. See 18 U.S.C. § 922(g). Specifically, the court must determine whether the defendant's New Hampshire convictions for selling heroin[1] are "serious drug offenses" within the meaning of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(A). If they are, the defendant faces a 15-year mandatory minimum sentence under the ACCA, 18 U.S.C. § 924(e)(1), and related provisions of the United States Sentencing Guidelines.

In its Presentence Investigation Report ("PSR"), the United States Probation Office recommended, inter alia, that the court adjudge the defendant an armed career criminal under the ACCA.[2] Applying the appropriate Guidelines, the PSR provided for a

---

[1] See N.H. Rev. Stat. Ann. § 318-B:2.

[2] PSR (doc. no. 32) ¶ 12.

sentencing range of 180-210 months.[3]  See U.S.S.G. §§ 4B1.4(a), (b)(3)(B), and 5G1.1(c)(2).  The defendant objects to the application of the ACCA.  He argues that his prior convictions are not "serious drug offenses" within the meaning of the ACCA.  Having considered the PSR and the parties' responses, the court concludes that the defendant's prior drug convictions fall within the ambit of the ACCA and that the defendant is therefore subject to the ACCA's mandatory minimum sentence.

## I.    **Applicable legal standard**

The ACCA provides that anyone convicted of violating § 922(g) who has three prior convictions "for a violent felony or a serious drug offense" is subject to a 15-year mandatory minimum sentence.  18 U.S.C. § 924(e)(1).  Only the latter, a serious drug offense, is at issue here.  The statute defines a "serious drug offense" as "an offense under State law, involving the manufacturing, distributing or possessing with intent to manufacture a controlled substance."  Id. § 924(e)(2)(A)(ii).  "'[I]nvolving' has expansive connotations, and . . . it must be construed as extending the focus of § 924(e) beyond the precise offenses of distributing, manufacturing, or possessing, and as encompassing as well offenses that are related to or connected with such conduct."  United States v. McKenney, 450 F.3d 39, 43-

_____

[3] Id. ¶ 70.

44 (1st Cir. 2006) (quoting United States v. King, 325 F.3d 110, 113 (2d Cir. 2003)).  "The government bears the burden of proving by a preponderance of the evidence that a defendant stands convicted of a particular [predicate] crime."  United States v. Mulkern, 854 F.3d 87, 90 (1st Cir. 2017).

## II.  Background

### A.  Guilty plea and sentencing guideline calculation

The defendant pleaded guilty in December 2017 to a one-count indictment charging him with possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1).[4]

Applying U.S.S.G. § 2K2.1(a)(2), the PSR assigned the defendant a Base Offense Level (BOL) of 24 because "the defendant committed the instant offense subsequent to sustaining a conviction for a felony controlled substance offense . . . in Hillsborough County (NH) . . . and a felony crime of violence (Robbery)."[5]  The PSR further noted that the defendant's

---

[4] Doc. no. 27.

[5] PSR (doc. no. 32) ¶ 16.  Section 2K2.1(a)(2) assigns an offense level of 24 if the defendant had "at least two [prior] felony convictions of either a crime of violence or a controlled substance offense."  The defendant challenges this calculation, arguing that his prior conviction for robbery does not amount to a "crime of violence" and that none of his prior drug-related offenses amounts to a "controlled substance offense," such that § 2K2.1(a)(2) does not apply.  See Def. Sent. Mem. (doc. no. 31) at 10-11.  The court disagrees.

As Judge Barbadoro has explained, a conviction for robbery under New Hampshire law amounts to a "violent felony" under the ACCA.

3

conviction under § 922(g), in combination with multiple state-court drug convictions, resulted in the defendant's designation as an armed career criminal, and the application of a 15-year minimum sentence.[6]  See U.S.S.G. § 4B1.4(a) ("[a] defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e) is an armed career criminal.").  This designation, in turn, raised Burghardt's BOL to 33.  Id. § 4B1.4(b)(3).[7]  After subtracting three points for acceptance of responsibility, U.S.S.G. §§ 3E1.1(a), (b), the PSR arrived at a Total Offense Level of 30.[8]

---

Boulanger v. United States, 2017 DNH 253, 9-18.  The same analysis compels the conclusion that a conviction for robbery amounts to a "crime of violence" under § 2K2.1(a)(2).  See United States v. Steed, 879 F.3d 440, 446 (1st Cir. 2018) ("precedents . . . that construe the force clause in the definition of a 'violent felony' under ACCA are directly relevant to the analysis that we must undertake in construing the force clause of the career offender guideline's definition of a 'crime of violence.'").  And, even if the defendant's convictions for sale of a controlled substance did not amount to "controlled substance offenses," his prior conviction for possession of a controlled substance with intent to distribute it constitutes a felony under a state law that "prohibits . . . the possession of a controlled substance . . . with intent to distribute" it, as U.S.S.G. § 4B1.2(b) requires.

Ultimately, however, the court need not reach this question, concluding as it does that the defendant's prior convictions for sale of a controlled substance fall within the ACCA's definition of a "serious drug offense."  See U.S.S.G. § 4B1.4(b)(3).

[6] Id. at ¶ 22.

[7] Id.

[8] Id. at ¶ 25.

4

This total offense level, combined with Burghardt's Criminal History Category VI, yielded a guideline range of 169 to 210 months.[9]  Under U.S.S.G. § 5G1.1(c)(2), the statutory minimum of 180 months automatically becomes the minimum guideline sentence.

## B.   Prior convictions

Burghardt was convicted in 2011 of three counts of sale of a controlled drug and one count of possession of a controlled drug with intent to sell, all in violation of N.H. Rev. Stat. Ann. § 318-B:2.[10]  A "sale" under New Hampshire law is defined to mean "barter, exchange or gift, or offer therefor, and each such transaction made by any person whether as a principal, proprietor, agent, servant, or employee."  Id. § 318–B:1, XXX.  See State v. Stone, 114 N.H. 114, 116-17 (1974) ("A 'sale' for the purposes of the controlled drug act involved here includes a 'gift or offer'.").  The present dispute centers on whether the three "sale" convictions are ACCA predicates.

---

[9] Id. at ¶ 70.

[10] Id. at ¶ 33.

## III. Analysis

### A.  Categorical approach

The court must employ a "categorical approach" to determine whether a prior conviction qualifies as an ACCA predicate offense. United States v. Whindleton, 797 F.3d 105, 108 (1st Cir. 2015). Under the categorical approach, the court "consider[s] only the offense's legal definition, forgoing any inquiry into how the defendant may have committed the offense." Id. (quoting United States v. Holloway, 630 F.3d 252, 256 (1st Cir. 2011)). For a prior offense to qualify as an ACCA predicate, "every realistically possible way of committing the offense [must satisfy] the definition of a serious drug offense." United States v. Bain, 874 F.3d 1, 29 (1st Cir. 2017). "[A] state crime cannot qualify as an ACCA predicate if its elements are broader than those" of the statutory definition. Mathis v. United States, 136 S. Ct. 2243, 2251 (2016). If the "least of the acts criminalized" by the statute does not fall within the ACCA's definition of a serious drug offense, then a conviction under that statute does not categorically qualify as a serious drug offense. Moncrieffe v. Holder, 569 U.S. 184, 191 (2013). "[I]f there is a match, the state conviction is an ACCA predicate." Mulkern, 854 F.3d at 90-91.

Absent a match between the statute of conviction and the ACCA definition, the court must employ a "modified" categorical approach. This requires the court to "separate out those offenses listed in the statute that align with [the ACCA] definition from those that do not and to determine which offense formed the basis of the defendant's prior conviction." United States v. Faust, 853 F.3d. 39, 51 (1st. Cir. 2017) (emphasis in original). The "modified [categorical] approach merely helps implement the categorical approach. . . . And it preserves the categorical approach's basic method: comparing those elements with the [ACCA definition]." Id. (quoting Descamps v. United States, 133 S. Ct. 2243, 2285 (2016)). "The modified categorical approach thus involves a two-stage process: determine if the statute contains discrete offenses that can be separated from each other (termed 'divisibility') and determine under which the defendant was convicted." Id. (citing Descamps, 133 S. Ct. at 2281). Divisibility, in turn, sometimes depends on whether the various types of listed offenses are "elements" or "means." Id. at 51-52.

**B. Elements or means**

When a statute lists several methods of committing a crime, the court must determine whether those alternatives are elements of the offense or merely alternative means by which the offense

can be committed.  "Elements are the constituent parts of a crime's legal definition, which must be proved beyond a reasonable doubt to sustain a conviction."  Mathis, 136 S. Ct. at 2248.  The other alternatives are "various factual means of committing a single element."  Id. at 2249.[11]

"If [the alternatives] are elements then the court proceeds to apply the modified categorical approach and determine which 'of the enumerated alternatives played a part in the defendant's prior conviction, and then compare that element (along with all the others) to those of the [ACCA definition].'"  Faust, 853 F.3d at 52 (quoting Mathis, 136 S. Ct. at 2256).  "If they are means, however, then the court's inquiry is at an end and the sentencing court may not delve into the facts of the case to determine which means this particular defendant used to commit

---

[11] The Court in Mathis provided a cogent explanation in the context of a hypothetical statute that required use of a "deadly weapon" as an element, and also provided that use of a "knife, gun, bat, or similar weapon" would qualify:

> Because that kind of list merely specifies diverse means of satisfying a single element of a single crime – or otherwise said, spells out various factual ways of committing some component of the offense – a jury need not find (or a defendant admit) any particular item: A jury could convict even if some jurors conclude[d] that the defendant used a knife while others conclude[d] he used a gun, so long as all agreed that the defendant used a deadly weapon.

Id. at 2249 (internal quotes omitted).

8

the offense." Id. And if the "least of the [means] criminalized" does not fall within the ACCA definition then the conviction is not an ACCA predicate. Moncrieffe, 569 U.S. at 191. This is an important distinction in this case because the element "sale" implicates several different means of commission.

The Supreme Court, however, has issued a cautionary note to sentencing courts attempting to construe arguably ambiguous state criminal statutes. As Judge Barbadoro observed, "[f]or good reasons . . . however, the Supreme Court has instructed courts to refrain from exercising 'legal imagination' when attempting to determine the least serious conduct criminalized by state statutes." Boulanger, 2017 DNH 253, 17 (citing Moncrieffe, 569 U.S. at 191). "[T]here must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.'" Moncrieffe, 569 U.S. at 191 (quoting Gonzalez v. Duenas-Alvarez, 549 U.S. 183, 193 (2007))

### C. The New Hampshire statute of conviction

The parties agree that the ACCA analysis turns on three of Burghardt's four prior convictions for violating N.H. Rev. Stat. Ann. § 318-B, part of New Hampshire's Drug Control Act. Section 318-B:2, I, which describes prohibited acts, provides:

> It shall be unlawful for any person to manufacture, possess, have under his control, sell, purchase,

9

> prescribe, administer, or transport or possess with intent to sell, dispense, or compound any controlled drug, or controlled drug analog, or any preparation containing a controlled drug, except as authorized in this chapter.

Thus, in addition to "selling" controlled substances, a defendant can violate this statute in several other ways, such as manufacturing, possessing, or possessing with intent to sell such substances.

### 1. The statute is "divisible"

"The first task for a sentencing court faced with an alternatively phrased statute is thus to determine whether they are elements or means." Mathis, 136 S. Ct. at 2256. The parties agreed at oral argument that the various acts prohibited by the statute -- manufacturing, possessing, having under control, selling, purchasing prescribing, administering, transporting, and possessing with intent to sell -- all expressed in the disjunctive through use of the word "or"[12] -- are distinct elements, often of different offenses.[13] Cases from the New Hampshire Supreme Court support this conclusion. See

---

[12] ANTONIN SCALIA, BRYAN GARNER, READING LAW 116 (2012) ("Under the conjunctive/disjunctive canon, and combines items while or credits alternatives.")(emphasis in original).

[13] Def. Sent. Mem. (doc. no. 31) at 3-4. As will be discussed, infra, the government's sentencing memorandum does not directly address the means/elements question with respect to N.H. Rev. Stat. Ann. § 318:B-2, I. The court declines to skip this important analytical step.

10

Mathis, 136 S. Ct. at 2256 (relying on state court decisions to determine whether acts are elements or means); compare State v. Cassidy, No. 2015-0162, 2016 WL 3475716 at *1-2 (N.H. Mar. 18, 2016) (listing elements necessary for conviction for selling a controlled substance) with State v. Francis, 167 N.H. 598, 604 (2015) (listing elements necessary for conviction for possession of a controlled substance). Given the different requirements of "what a jury must find beyond a reasonable doubt," Mathis, 136 S. Ct. at 2248, the court is persuaded that the listed acts in § 318-B:2, I, are distinct elements and that the statute is therefore divisible.

## 2. **"Selling" was the element of conviction, and "selling" includes offers to sell**

Having found that the statute is divisible, the court turns to determining "which offense the defendant was actually convicted of." Faust, 853 F.3d at 52. To do so, the court consults so-called "Shepherd documents": "the statutory definition, charging document, written plea agreement, transcript of the plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." Faust, 853 F.3d at 53 (quoting Shepard v. United States, 544 U.S. 13, 16 (2005)).

Here, the parties agree with the PSR that the defendant was convicted of "selling" heroin. At first glance, this would seem

11

to resolve the issue, as "selling" drugs neatly fits within the ACCA definition of a "serious drug offense," i.e., one "involving . . . distribut[ing] a controlled substance." 18 U.S.C. § 924(e)(2)(A)(ii). But a second level of analysis is necessary.

As previously noted, New Hampshire law defines "sale" as a "barter, exchange or gift, or offer therefor . . . ." N.H. Rev. Stat. Ann. § 318-B:1, XXX (emphasis added); State v. Stone, 114 N.H. 114, 116-17 (1974) (observing that a "sale" for purposes of the New Hampshire Drug Control Act includes a "gift" or "offer" to sell drugs). Based on this definition, and citing cases from several Courts of Appeals, the defendant argues that his prior convictions are not ACCA predicates because an "offer to sell" drugs does not match the ACCA definition of "serious drug offense." But the cases defendant cites do not address the interaction between state offer-to-sell statutes in relation to the ACCA; instead, they analyze the laws in question only as they relate to the Sentencing Guidelines' Career Offender provision. See, e.g., United States v. Madkins, 866 F.3d 1136 (10th Cir. 2017); United States v. Hinkle, 832 F.3d 569 (5th Cir. 2016); United States v. Bryant, 571 F.3d 147 (1st Cir. 2009); United States v. Savage, 542 F.3d 959 (2d Cir. 2008). The difference is critical, because the ACCA definition of "serious drug offense," unlike the Guideline definition of

12

"controlled substance offense,"[14] includes the word "involving" prior to the list of predicate offenses, thus broadening the ACCA definition.  See U.S.S.G. § 4B1.4 cmt. n.1 (noting that ACCA's definition of "serious drug offense" is not identical to Guidelines definition of "controlled substance offense"); see also United States v. Bynum, 669 F.3d 880, 886 (8th Cir. 2012) (rejecting defendant's argument that the ACCA definition should be construed narrowly to conform to Guidelines' definition); McKenney, 450 F.3d at 42 (1st Cir. 2006) ("By using 'involving,' Congress captured more offenses that just those that 'are in fact' the manufacture, distribution, or possession with intent to distribute, a controlled substance.").

At oral argument, the defendant conceded the obvious:  that the ACCA's inclusion of the word "involving" makes it broader than the Career Offender Guideline.  The cases he cites therefore do not resolve this issue or establish that the "sale" element of § 318-B:1 is not an ACCA predicate.

### 3.  "Offering" is a means of "selling" under the statute

Given the statutory definition of "sell," the court must determine whether an "offer to sell" fits the ACCA definition of

---

[14] The Guidelines define a "controlled substance offense" as "an offense . . . that prohibits the . . . distribution . . . of a controlled substance . . . ."  U.S.S.G. § 4B1.2(b).

13

"serious drug offense."  The starting point, again, is the "means or elements" analysis.  Here, the parties agree and the court finds that the various alternatives listed in N.H. Rev. Stat. Ann. § 318-B:1, XXX are, as defendant argues, "means," rather than "elements."  Those alternatives are simply "various factual means of committing a single element" -- to "sell." Mathis, 136 S. Ct. at 2249 (citing Schad v. Arizona, 501 U.S. 624, 636 (1991) (plurality opinion)).  Accordingly, the court must decide, without examining additional record documents, whether an "offer to sell" under New Hampshire law "involves manufacturing [or] distributing a controlled substance," as the ACCA defines a "serious drug offense."  18 U.S.C. § 924(e)(2)(A)(ii).

### 4.  § 318-B:2, I, criminalizing offers to sell controlled substances, is an ACCA predicate

In Whindleton, supra, the First Circuit Court of Appeals found that a New York statute, which, like New Hampshire's statute, criminalized "offers to sell," qualified as a "serious drug offense" under the ACCA.  797 F.3d at 111.  The Court concluded that "an offer to sell a controlled substance - like an attempt to sell or a conspiracy to sell - is necessarily related to and connected with its ultimate goal, the distribution of controlled substances."  Id.

14

While such binding authority would appear to end the matter, Whindleton's discussion of New York law may add a wrinkle. The Court of Appeals noted that New York law requires "evidence of a bona fide offer to sell – i.e., that defendant had both the intent and the ability to proceed with the sale." Id. at 110 (citing People v. Mike, 706 N.E.2d 1189, 1191 (N.Y. 1998)). "A fraudulent offer" to "sell the Brooklyn Bridge" would fail this test because the offeror "lacks the intent to consummate the sale." Id. at 110-111 (internal quotation marks omitted). "And while there need not be proof that the defendant already possessed the controlled substance,"[15] New York law requires "proof that he or she had the ability to proceed with the sale." Id. at 111.

The defendant argues that the court should not reach the same conclusion about New Hampshire law because neither the New Hampshire statute nor any New Hampshire Supreme Court decision requires proof of "intent" and "ability" as indicia of the bona fides of the offer, as required under New York law. The

---

[15] According to a non-precedential New Hampshire Supreme Court order, New Hampshire's statute likely shares this characteristic of New York law. See State v. Mars, No. 2014-0811, 2016 WL 3748712 at *1, (N.H. May 13, 2016) (non-precedential order) (affirming trial court's use of jury instruction defining sale as including an offer "to sell or give control of drugs to another person, but, in fact, no drugs were actually given or sold.").

defendant is correct to the extent that neither party has cited, and the court is unaware of, any New Hampshire case expressly requiring such proof.

But the defendant overstates the import and effect of Whindleton's reference to "intent and ability."  Whindleton did not hold that an ACCA predicate statute prohibiting offers to sell must necessarily require proof of intent and ability to deliver.  The Court of Appeals observed only that, under the circumstances present in that case, those factors were sufficient to qualify the defendant's New York state law conviction as an ACCA predicate.  It did not declare them necessary to its conclusion.  See id. at 111 ("It is sufficient in this case that the defendant entered 'the drug marketplace' with the intent and ability to proceed with the sale of a controlled substance if his or her offer were accepted.").  The Court then reiterated the point:  "We hold today only that an offer to sell under New York law—requiring the intent and the ability to proceed with a sale—sufficiently 'involv[es]' the distribution of drugs to qualify as a 'serious drug offense' under the ACCA."  Id.  It did not hold that a conviction under a law not requiring such proof would not so qualify.

In fact, our Court of Appeals' reliance on two cases from other federal appellate courts suggests that the Court would conclude that drug trafficking statutes criminalizing offers to

16

sell constitute ACCA predicates irrespective of any requirement to prove ability or intent to actually deliver.

Whindleton cited, without limitation or qualification, cases decided by the Fifth and Eighth Circuit Courts of Appeals that "concluded that offers to sell controlled substances are sufficiently 'related to or connected with' drug distribution to qualify as serious drug crimes." Id. at 110. In United States v. Vickers, 540 F.3d 356 (5th Cir. 2008), the Court addressed a Texas law that did not require the defendant to "have any drugs to sell or even intend ever to obtain the drugs he is purporting to sell." Id. at 365 (emphasis added). The Court nevertheless concluded that the Texas conviction qualified as a "serious drug offense" under the ACCA. Id. at 366. The Vickers court explained that "[t]he expansiveness of the word 'involving' supports that Congress was bringing into the statute's reach those who intentionally enter the highly dangerous drug distribution world." Id. at 365.

In Bynum, supra, the Court considered a Minnesota law that did "not require that the defendant possess any drugs or have specific intent to complete the sale . . ." 669 F.3d at 887 (emphasis added) (citing Minnesota v. Lorsung, 658 N.W. 2d 215, 218–19 (Minn. Ct. App. 2003)). The Court rejected the defendant's assertion that an offer to sell drugs "must be 'genuine, made in good faith, or be accompanied by an actual

17

intent to distribute a controlled substance' to 'involve' drug distribution." Id. at 887. Instead, the Court held that "so long as that defendant has intentionally made an offer to sell a controlled substance, he or she has 'intentionally enter[ed] the highly dangerous drug . . . marketplace as a seller.'" Id. (quoting Vickers, 540 F.3d at 365–66).

Whindleton's unqualified reliance on Vickers and Bynum, both of which eschewed any state-law requirement of a defendant's ability or intent to complete a sale, persuades the court that defendant's New Hampshire convictions for selling heroin "involv[e] . . . distributing . . . a controlled substance" within the meaning of the ACCA.

Even if Whindleton were read to impose proof of such ability and intent as requirements for ACCA predicate status, however, the available authority from New Hampshire, while not entirely conclusive, strongly suggests that a fake, phony, or fraudulent offer -- in other words, an offer not supported by the intent or ability to deliver controlled drugs -- is not criminalized by N.H. Rev. Stat. Ann. § 318-B:2.

The New Hampshire Supreme Court has not explicitly set forth the elements of a conviction for selling illegal drugs under § 318:B-2 in any decision constituting binding precedent. In a persuasive, non-binding opinion, (see N.H. Sup. Ct. R. 20) it held that proof of selling (or in this case offering) and a

18

culpable mental state of "knowing" are required to support a conviction.  See State v. Cassidy, No. 2015-0162, 2016 WL 3475716 (N.H. Mar. 18, 2016) (non-precedential order).  In Cassidy, the Court approvingly recited the trial court's jury instructions as to the elements of the offense:

> First, the Defendant sold a substance to another;
> And, second, the Defendant knew the substance was heroin;
> And, third, the amount of the controlled drug was less than one gram, including any adulterants or diluents;
> And, fourth, the Defendant acted knowingly.

Id. at *2.

In addition, New Hampshire's Criminal Jury Instructions, endorsed by the state Supreme Court,[16] require proof that:

1. The defendant acted knowingly; and,
2. That he sold an item to another person; and
3. That the item was a controlled drug.

N.H. Criminal Jury Instructions 2.38 (1985).  The Model Instruction goes on to define a sale as including offers to sell.  Id.  Under New Hampshire criminal code, "[a] person acts knowingly with respect to conduct or to a circumstance that is a material element of an offense when he is aware that his conduct is of such nature or that such circumstances exists."  N.H. Rev. Stat. Ann. § 626, II(b).

---

[16] The New Hampshire Supreme Court "recommend[s] that trial courts use the New Hampshire Model Jury Instructions when practicable, in order to avoid needless litigation."  State v. Leveille, 160 N.H. 630, 633-34 (2010).

As similarly expressed by the New Hampshire Supreme Court, "[a] person acts knowingly when he is 'aware that it is practically certain that his conduct will cause a prohibited result.'" State v. Bergen, 141 N.H. 61, 63 (1996) (quoting State v. Ayer, 136 N.H. 191, 194 (1992)) (citing definition of "knowing," N.H. Rev. State. Ann. § 626:2, II(b). The "conduct or circumstance" in this case, the "prohibited result," is the sale or offer of illegal drugs.

Whether expressed as set forth in Cassidy or as set forth in N.H. Model Instruction 2.38, the elements under New Hampshire law capture the same acts and culpable mental state as the New York law that the Whindleton Court found "sufficient" under the ACCA. Unlike an "offer to sell the Brooklyn Bridge," a knowing offer to sell a controlled substance evinces, under Whindleton's analytic framework, an intent to consummate the sale. Further, New Hampshire's requirement that the defendant act knowingly -- i.e., with the awareness that it is "practically certain of a prohibited result" -- persuades the court that a jury could only convict a defendant if it found that the defendant had the ability and intent to achieve a "prohibited result" -- the sale of a controlled substance, which the parties agree is the element itself, as opposed to merely the means of committing it.

While New Hampshire law does not entirely eliminate the purely linguistic possibility that § 318-B:2 criminalizes a fake

20

or fraudulent offer (an offer that lacks the intent or ability to deliver, or both), a conviction (or even an indictment) for such conduct is not a "realistic probability," as required by Moncrieffe, 569 U.S. at 191. Simply put, there is no evidence or reason to believe that the State of New Hampshire has ever or will ever prosecute an offer to sell unlawful drugs unsupported by any intention or ability to deliver, or stated in the terms used in Moncrieffe, that "the State would apply its statute to conduct" the defendant contemplates here, 569 U.S. at 191 (quoting Gonzales 549 U.S. at 193). The improbability is demonstrated by: 1) the lack, acknowledged by both parties, of any reported cases describing fake or fraudulent offers even in cases decided on other grounds; and 2) the lack, also acknowledged by both parties, of any recollection or knowledge of a New Hampshire drug case alleging such conduct on the part of anyone involved in this criminal case.

In an abundance of caution,[17] the court reconvened the sentencing hearing after initially imposing sentence to address

---

[17] The court's caution is borne of the relative severity of the application of the ACCA in this case, where the court would not necessarily be inclined to impose a 15-year sentence were it not mandated as a minimum sentence. Without application of the ACCA, the Guideline Sentencing Range in this case would be 72-96 months, based on a post-acceptance of responsibility Total Offense Level of 21 with a Criminal History Category of VI. See Presentence Report ¶¶ 12-21, 40-42 (Doc. no. 29). The prosecution's conditional sentencing recommendation if the ACCA did not apply was eight years (doc. no. 34). Further, the

21

the remote linguistic possibility that such prosecutions under § 318-B:2: I actually take place, or have ever taken place, in New Hampshire.  Defense counsel raised the possibility of his contacting the state "appellate defender['s office] because they . . . see tons of transcripts in which . . . instructions [are] given."  Although the defendant offered neither applicable precedent from case law, reported or unreported, nor any anecdotal accounts of such cases, the court granted leave for defense counsel to supplement the record with any anecdotal evidence suggesting that "so-called fake offers cases, offers unsupported by intent or ability . . . are routinely or even occasionally brought in [New Hampshire] state court . . . ."  Defense counsel's ensuing supplemental memorandum[18] contained no indication that § 318-B:2 has been employed in that fashion.

Given this dearth of support in the form of decisional law or even anecdotal accounts, the linguistic possibility of § 318-B:2 encompassing fake or fraudulent offers is nothing more than a "theoretical possibility that the State would apply its

---

lengthiest sentences the defendant had served prior to this offense were far shorter state sentences, often shortened further with significant suspended time.  The court therefore explored every avenue, including what appears to be the purely theoretical, merely linguistic possibility the defendant advances, to conclusively determine the ACCA's certain applicability here.

[18] Doc. no. 36.

22

statute to conduct that falls outside" the ACCA definition.

Moncrieffe, 569 U.S. at 191.  Adopting the defendant's position would require the court to engage in the type of "legal imagination" that the Supreme Court has proscribed.  Id.

On that basis, even if the court reads Whindleton in the manner the defendant suggests, the court finds that an offer to sell a controlled substance under New Hampshire law comports with that standard and therefore meets the ACCA definition of a "serious drug offense."[19]

---

[19] While the court's analysis of Whindleton is sufficient to end the matter, the prosecution offered a slightly different analysis which buttresses the court's conclusion.

The prosecution focused on Whindleton's reference to "bona fide offers to sell," 797 F.3d at 110, rather than its reference to a defendant's "ability" or "intent" to consummate the sale.  It then framed the question as whether New Hampshire criminalizes both bona fide and fraudulent offers to sell drugs within the same offense.  It asserts that New Hampshire law does not, and that a defendant convicted of "selling drugs," like Burghardt, could not have been convicted of making a fraudulent offer.

The prosecution relies on another type of "fraudulent" offer criminalized by New Hampshire's criminal code.  N.H. Rev. Stat. Ann. § 318-B:2,I-a prohibits the sale of "any substance which [the defendant] represents to be a controlled drug . . . ." (emphasis added).  Subsection I of § 318-B:2 charges bona fide offers, the argument goes, while subsection I-a charges fraudulent offers.  Thus, applying the modified categorical approach and noting that the defendant was convicted of selling a controlled substance under subsection I, rather than something he "represented to be" a controlled substance under subsection I-a, the defendant's prior convictions must be for selling "real" drugs, i.e., a "bona fide" sale, as described in Whindleton.

Having applied the categorical approach to defendant's New Hampshire convictions, and in light of the elements of those convictions and the definition of those elements, the court finds that a conviction based on an offer to sell contraband under New Hampshire law fall[s] within the ACCA definition of a serious drug offense.

## IV.  Conclusion

Defendant's New Hampshire convictions for selling heroin are "serious drug offenses" within the meaning of the ACCA.  The court therefore adopts the finding in the Presentence Report and sentences him as an armed career criminal.

---

The court agrees that a convicted defendant's "offer" to sell "real" drugs (and not, for example, a non-controlled counterfeit substance), is an example of a "non-fraudulent" offer.  Cf. Whindleton, 797 F.3d at 110-111 (noting that "one [who] offers to sell the Brooklyn Bridge lacks the intent to consummate the sale.").  And the government's analysis accurately illustrates that § 318-B:2, I covers such "bona fide" offers to sell "real" controlled substances, since by negative inference, subsection I-a does not.  But subsection I-a covers only that:  offers where the defendant intends to provide a "fake" substance, not those where the defendant intends to provide nothing, or stated differently, lacks the intent to provide anything.  So while the prosecution's argument supports the court's conclusion, it is not dispositive.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:     July 26, 2018

cc:  Anna Dronzek, AUSA
     Jonathan R. Saxe, Esq.