NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-northern judicial district
No. 2019-0503

THE STATE OF NEW HAMPSHIRE

v.

BRANDON GRIFFIN

Argued: November 16, 2021
Opinion Issued: January 11, 2022

John M. Formella, attorney general (Elizabeth C. Woodcock, senior assistant attorney general, on the brief and orally), for the State.

Christopher M. Johnson, chief appellate defender, of Concord, on the brief and orally, for the defendant.

DONOVAN, J. The defendant, Brandon Griffin, appeals his conviction, following a jury trial in the Superior Court (Anderson, J.), of being a drug enterprise leader (DEL). See RSA 318-B:2, XII (2017). On appeal, the defendant challenges the trial court's denial of his pretrial motions to dismiss the DEL charge for: (1) lack of a speedy trial; and (2) violating his right to due process of law as set forth in State v. Lordan, 116 N.H. 479 (1976). We conclude that the defendant's right to a speedy trial was not violated because the defendant acquiesced to the majority of the delay and suffered no

identifiable prejudice.  We further conclude that the defendant's due process rights were not violated because our holding in Lordan is inapplicable to the State's DEL prosecution of the defendant.  We affirm.

I. Facts

The following facts are supported by the record or are otherwise undisputed.  The defendant was the leader of a gang and drug-dealing entity based in Manchester.  The defendant supplied the drugs, which the gang and its members sold.  In April 2016, a dispute broke out between the gang and a rival drug dealer.  Between May 2016 and June 2016, the defendant ordered two of his associates to carry out multiple shootings at various locations in Manchester.  Several of these shootings targeted the rival drug dealer with the intent of forcing him out of the area.  The defendant provided the weapon and compensated the shooters for each of the shootings.

On June 9, 2016, police executed a warrant to search an apartment that served as the gang's headquarters.  Police found illegal drugs and arrested several of the gang's members.  That same day, police observed the defendant in a vehicle driving away from the apartment and arrested him after a search of the vehicle revealed contraband.  The defendant was subsequently charged with possession of a controlled drug, possession with intent to distribute, and falsifying physical evidence.  In November 2016, the defendant entered into a plea agreement by which he pled guilty to one count of possession of a controlled drug and one count of common nuisance.  He was sentenced to a twelve-month house of correction term and released in February 2017.

In June 2017, the defendant was again arrested, this time after the police found drugs in another apartment in which he was present.  The State then brought numerous charges against the defendant.  Between September 2017 and January 2018, the defendant was indicted on numerous offenses under separate dockets: the first docket included drug offenses based upon the contraband found during the June 2017 search; the second docket included assault, human trafficking, and witness tampering charges; the third docket related to the shooting incidents, among other things; and the fourth docket included a DEL charge.  In April 2018, the State amended the DEL charge and reindicted the defendant under the fourth docket.  Subsequently, in June 2018, the State again amended the DEL indictment and expanded the time frame for the charge.  For reasons not clear from the record, the State brought the amended indictment on the second docket.

Prior to trial, both parties stated their preference to sever the dockets and schedule separate trials.  The court indicated that "the State has the prerogative to decide which case it decides to go first on," and the State responded that it preferred the third docket, which included the charges related to the shootings.  In October 2018, the State discovered irregularities in

the composition of the grand jury that indicted the defendant on the charges on the third docket. Ultimately, the State opted to nolle prosse all of the charges on the third docket. At the next hearing in November 2018, the court instructed the State to choose one of the remaining dockets to schedule for trial in place of the third docket. The State chose the second docket, which included the DEL charge, but later moved to continue the trial date. The defendant objected and the court denied the State's motion to continue. In response, the State nolle prossed the charges on the second docket.

In January 2019, the State reindicted the defendant on some of the nolle prossed charges on the third docket and secured another DEL indictment. Ultimately, seventy-two indictments, including the most recent DEL indictment, were joined on one docket and scheduled for trial in May 2019. In April 2019, approximately two weeks before trial, the defendant filed a motion to dismiss the DEL charge, citing a violation of his speedy trial rights. The trial court applied the four factors set forth in Barker v. Wingo, 407 U.S. 514, 530 (1972), and concluded that the defendant's speedy trial rights had not been violated. In a separate motion, the defendant moved to dismiss the DEL charge, alleging, in part, a violation of his due process rights. With respect to his due process claim, the defendant argued that the facts underlying his November 2016 plea agreement and the pending DEL indictment arose out of the same transaction and thus our decision in Lordan barred the DEL indictment. The court rejected this argument, reasoning that Lordan applies to a single criminal episode and a discrete set of facts, not broad-ranging conspiracy charges such as the DEL indictment. Accordingly, the court denied the motion to dismiss. The jury found the defendant guilty on fifty-three of the charges, including the DEL indictment. This appeal followed.

## II. Analysis

## A. Speedy Trial

The defendant argues that the trial court erred by denying his motion to dismiss the DEL charge because he was denied his right to a speedy trial under the State and Federal Constitutions. Following our standard practice, we first address the defendant's argument under the State Constitution, and cite federal opinions for guidance only. See State v. Ball, 124 N.H. 226, 231-33 (1983).

When determining whether a defendant's right to a speedy trial has been violated under the State Constitution, we apply the four-part test articulated in Barker, 407 U.S. at 530. State v. Brooks, 162 N.H. 570, 581 (2011). This test requires that we balance four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the prejudice to the defendant caused by the delay. Id. We defer to the trial

3

court's factual findings unless those findings are clearly erroneous, and we review the court's conclusions of law with respect to those factual findings de novo. Id.

The threshold inquiry in the speedy trial analysis is the length of the delay. Brooks, 162 N.H. at 581. We do not consider the remaining factors unless the delay is presumptively prejudicial. Id. Here, we adopt the approach of the trial court, and assume, without deciding, that the State entered the nolle prosequi on the DEL charge in bad faith. Accordingly, we calculate a delay of sixteen months from when the defendant was indicted on the initial DEL charge in January 2018 to the trial in May 2019. See State v. Allen, 150 N.H. 290, 293 (2003) ("Where there is a finding of bad faith on the State's part in nolle prossing a case, then the time counted for speedy trial analysis will continue to run."). A sixteen-month delay presumptively triggers review of the remaining factors. See State v. Colbath, 130 N.H. 316, 319 (1988) ("[R]eaching the nine-month check point signals enough presumptive prejudice to warrant review under the remaining criteria.").

The second Barker factor — the reason for the delay — requires that we assess why the trial was delayed, to which party the delay is attributable, and how much weight to give the delay. Brooks, 162 N.H. at 582. Here, the trial court found that an "informal agreement" existed between the parties to resolve the charges on the third docket, before proceeding with the DEL charge. Therefore, although the State was responsible for five months of the delay due to the nolle prosequi of the DEL charge in the second docket, the court determined that, on balance, the parties shared responsibility for the majority of the delay due to their informal agreement.

On appeal, the defendant argues that the trial court erred by concluding that an informal agreement existed between the parties and by attributing any responsibility for the delay to the defendant. We agree with the defendant that no such agreement existed between the parties. Nor could any such agreement exist, as the court determined that the State had unilateral authority to determine the scheduling order of the dockets. Nonetheless, contrary to the defendant's argument, the defendant still bears some responsibility for the delay. During a hearing in February 2018, the court informed the parties that it had consolidated all of the open dockets and scheduled them for trial in April 2018. The defendant stated his preference, to which the State later assented, to sever the dockets and schedule separate trials. After this exchange, the court declared that the State "ha[d] the prerogative to decide" the order in which the dockets were to be tried. Therefore, the defendant's preference to sever the dockets and schedule separate trials contributed to both the State determining the order of the dockets, and, by extension, the ten-month delay in scheduling the DEL charge for trial. See State v. McDuffee, 123 N.H. 184, 187

4

(1983) ("The defendant cannot have it both ways, insisting on separate trials and attempting to dismiss the indictments against him for lack of speedy trial.").

Furthermore, the defendant could have asserted his speedy trial rights in response to the State deciding not to set the DEL charge for trial. Instead, at multiple hearings over the next ten months, the defendant acquiesced to the State's preference. For example, at a hearing in March, the defendant informed the court, "[i]t was agreed that we would proceed on [the third docket] and to avoid scheduling six other trials" and that "we decided that those docket numbers would tail [the third docket], which made perfect sense at the time." Moreover, at a hearing in July, the defendant convinced the court to delay resolution of pretrial motions pertaining to the other dockets until after trial was completed on the third docket. Therefore, the record demonstrates that the defendant's acquiescence to the State's decision further contributed to the delay. See Barker, 407 U.S. at 535 (holding that the defendant was not deprived of this right to a speedy trial, in part, because "while he hoped to take advantage of the delay in which he had acquiesced and thereby obtain a dismissal of the charges, he definitely did not want to be tried").

We next consider the third and fourth Barker factors, upon which we place substantial emphasis. See Brooks, 162 N.H. at 582. Under the third factor, we consider the strength of a defendant's assertion of his right to a speedy trial. Id. Here, the trial court found that the defendant asserted his speedy trial rights by objecting to the State's motions to continue in November 2018 and April 2019. However, because the court found that the defendant did not consistently assert his right, waiting until the eve of trial in both instances, it determined that this factor did not weigh heavily in his favor.

The defendant challenges this finding, arguing that, as early as August 2018, he represented to the court that he did not "want to continue this trial," and in October 2018 objected to the State's motion to continue. However, the record indicates that these representations were limited to the third docket and did not pertain to the defendant's DEL charge. Because the defendant only alleges a denial of his speedy trial right as it pertains to the DEL charge, we do not weigh these assertions of the right in his favor. The defendant waited over ten months from his indictment in January 2018 to assert his speedy trial right with respect to the DEL charge. Therefore, although this factor "weighs in [the defendant's] favor, it does not do so heavily." See State v. Lamarche, 157 N.H. 337, 343 (2008) (holding that the third factor of the Barker analysis did not weigh heavily in the defendant's favor because "he waited nearly six months from the time the State entered the nolle prosequi and approximately ten months from the date of his indictment" to assert his speedy trial right).

The final Barker factor requires that we determine whether, and to what extent, the defendant suffered prejudice, including whether the delay resulted

5

in an oppressive pretrial incarceration, anxiety, or an impaired defense. Brooks, 162 N.H. at 583. The defendant first relies upon considerations of anxiety and oppressive pretrial incarceration. But this argument is unavailing because the defendant was incarcerated on numerous open criminal dockets, which, given his stated preference for severed trials, would have required months to try or otherwise resolve. See Lamarche, 157 N.H. at 344.

The defendant also argues that the delay caused by the November 2018 nolle prosequi precluded one of his two original attorneys from representing him at trial. The defendant maintains that, as a result, his replacement counsel had less time to prepare for trial, which ultimately prejudiced him by impairing his defense. We are unpersuaded because the record does not support this argument. In October 2018, the defendant's former counsel moved to withdraw and to substitute new counsel. The following month, with new counsel appointed, the defendant objected to the State's motion to continue trial on the DEL charge. According to the defendant, "the defense was fully prepared and ready to proceed" at that time. Based upon this representation, it follows that the defendant would have been even more prepared for trial in May 2019, approximately six months after he objected to the State's motion to continue. Ultimately, the defendant was represented by the same co-counsel for the duration of the DEL indictment, and he identifies no instances in the record suggesting that this potential prejudice materialized.

Although we typically require a defendant to demonstrate actual prejudice from a delay to prevail on a speedy trial claim, when a defendant does not — or cannot — articulate the particular harm caused by delay, we inquire whether the length and reason for the delay weigh so heavily in the defendant's favor that prejudice need not be specifically demonstrated. State v. Locke, 149 N.H. 1, 8 (2002). Here, as explained above, these factors do not weigh heavily in the defendant's favor due, in large part, to his acquiescence to the delay. As noted above, the defendant first asserted his speedy trial rights with respect to the DEL charge in November 2018, and the trial occurred in May 2019. Accordingly, after balancing the Barker factors, we conclude that the defendant's right to a speedy trial under the State Constitution was not violated and thus the trial court did not err by denying the defendant's motion to dismiss. Because the Federal Constitution is no more protective of the defendant's speedy trial rights than the State Constitution, see Brooks, 162 N.H. at 584; Barker, 407 U.S. at 530, we reach the same conclusion under the Federal Constitution.

## B. Due Process

The defendant also argues that the trial court erred by denying his motion to dismiss because prosecution of the DEL charge violated his right to due process of law under the State and Federal Constitutions. We first address the defendant's argument under the State Constitution, and cite federal

opinions for guidance only.  See State v. Ball, 124 N.H. 226, 231-33 (1983).  When determining whether the State's actions violated the defendant's due process rights under Part I, Article 15 of the State Constitution, we look to the dictates of fundamental fairness.  State v. Winslow, 140 N.H. 319, 321 (1995).  A fundamentally unfair adjudicatory procedure is one, for example, that gives a party a significant advantage or places a party in a position of prejudice.  State v. Symonds, 131 N.H. 532, 534 (1989).  We will uphold a ruling on a due process claim unless the ruling is "erroneous as a matter of law."  Id.

In support of his due process argument, the defendant relies solely upon State v. Lordan, 116 N.H. 479 (1976).  In Lordan, the defendant pled guilty to two counts of attempted murder for shooting a pistol at two individuals and one count of robbery while armed with a deadly weapon.  Id. at 480-81.  At sentencing, the defendant successfully moved to have his sentences run concurrently.  Id. at 481.  Dissatisfied with this outcome, the State reindicted the defendant on precisely the same charges and based upon the same set of operative facts.  Id.  The only difference between the original and subsequent indictments was the allegation of a new aggravating factor, which would preclude any future sentences from running concurrently.  Id. at 480-81.  The trial court denied the defendant's motion to dismiss the indictments.  Id. at 481.

On appeal, the defendant argued, in part, that proceeding to trial on the subsequent indictment would violate his due process rights.  Id. at 480.  We determined that "[t]he circumstances of the present case indicate that the defendant reasonably believed that no further charges would be brought in relation to the episode when he pleaded guilty to the first three indictments." Id. at 482.  This determination was based, in part, upon considerations that "[n]othing prevented the prosecutor from seeking the present indictments then," together with the fact that, by pleading guilty to the former charges, the defendant "deprived himself of any meaningful defense to the present charges." Id. at 481.  Therefore, we concluded that the motion to dismiss should have been granted because "the filing of the present indictments violated the understanding which was the basis of the defendant's earlier pleas." Id. at 482.  Following this conclusion, we announced the following rule:

> Where the defendant commits several offenses in a single transaction and the prosecutor has knowledge of and jurisdiction over all these offenses and the defendant disposes of all charges then pending by a guilty plea to one or more of the charges, the prosecutor may not prefer additional charges arising from the same transaction unless either he has given notice on the record at the time of the plea of the possibility that he may prefer further charges or the defendant otherwise knows or ought reasonably to expect that further charges may be brought.

Id.  (emphases added).

The defendant argues that this rule applies here, and, therefore, the State could not indict him on the DEL charge because it was based, in part, on facts underlying his plea agreement in November 2016. We disagree. Our rule in Lordan limits the State's action only to the extent that once a defendant pleads guilty, "the prosecutor may not prefer additional charges arising from the same transaction." Id. (emphasis added). This same transaction includes the charges to which the defendant pled guilty, as well as any other charges resolved by the plea agreement. Id. Given the facts at issue in Lordan, we conclude that its central holding bars a subsequent prosecution only when the facts underlying the prior plea agreement and those underlying the subsequent indictment arise entirely from the same transaction. See id. at 480.

Here, unlike Lordan, the defendant's prior plea agreement and subsequent indictment do not arise entirely from the same transaction. As established by the November 2016 plea colloquy, the defendant's prior common nuisance conviction was based upon the defendant, acting in concert with others, to obtain the drugs found during the June 2016 search of the gang's headquarters. Further, the prior controlled drug possession conviction was based upon the discovery of contraband found in a car in which the defendant was a passenger at the time of his arrest in June 2016. The other charges nolle prossed by the State as a result of the defendant's November 2016 plea agreement — falsifying physical evidence and possession with intent to distribute — are also based upon the same facts underlying his two convictions.[1]

In contrast, with respect to the DEL indictment for which the defendant stood trial, the State alleged numerous instances of criminal conduct occurring from January 2014 to June 2016. Although this time period encompassed, in part, facts underlying the defendant's prior plea agreement, the DEL indictment's twenty-five month time period also encompassed other criminal conduct on which the defendant was separately indicted, including multiple shooting incidents aimed at driving competition out of Manchester, assaults on his associates who did not follow orders or repay debts, and forcing another associate to sell illicit drugs. The DEL indictment charges the defendant with providing the drugs to be sold by members of the gang and, critically, having "used and directed violence [in] furtherance of his illegal drug activities." As the State argued before the trial court, the DEL indictment required much of the same evidence as the other indictments noted above and thus supported joinder of all the charges. Indeed, on appeal, both parties acknowledge that the DEL indictment was "incredibly broad" and targeted at "link[ing] together all the charges" joined against the defendant for trial in May 2019.

---

[1] Any reference to the defendant's prior plea agreement includes both the convictions and the charges nolle prossed as a result of the November 2016 plea agreement.

Therefore, in contrast to Lordan, the defendant's DEL indictment was not based solely upon the facts of his prior plea agreement, but also the facts underlying the seventy-one other indictments, which, on that basis, were joined with the DEL indictment for trial in May 2019.  Accordingly, the facts underlying the defendant's prior plea agreement and his subsequent DEL indictment do not arise entirely from the same transaction.  On appeal, the defendant concedes as much, acknowledging "that other subsequently-charged offenses, such as the shooting charges, were not part of the same transaction as the common nuisance and drug possession charge . . . because they happened at different times and places."

We have not identified, and the defendant has not cited, any case in which we have applied the rule set forth in Lordan to a series of incidents that, as here, took place over the course of several years.  Rather, in our cases applying the rule set forth in Lordan, the subsequent indictment arose entirely from the same incident as the defendant's plea agreement.  See, e.g., State v. Rayes, 142 N.H. 496, 497-98, 500 (1997) (citing Lordan when the prior conviction and subsequent indictments arose from the same incident of attempted murder); State v. Smith, 127 N.H. 836, 839 (1986) (holding that because the State already indicted the defendant on two counts of sexual assault, the State could not indict the defendant for a third act of sexual assault that occurred the same evening).

Moreover, the defendant has not identified any cases from other jurisdictions that interpret Lordan so broadly.  To the contrary, in each case relied upon by the defendant that cites Lordan, the facts supporting the prior plea agreement and the subsequent indictment arose entirely from the same criminal incident.  See State v. Harrison, 912 N.E.2d 1106, 1110 (Ohio 2009) (holding that prosecutors could not pursue further charges against the defendant after he pled guilty to charges arising from "the same general set of circumstances as the original complaint against him"); State v. Zima, 806 N.E.2d 542, 544-45 (Ohio 2004) (citing Lordan when the plea agreement and subsequent indictment arose from a single motor vehicle incident); State v. Carpenter, 623 N.E.2d 66, 67-68 (Ohio 1993) (citing Lordan when the defendant pled guilty to assault and the victim later died of injuries from the same assault); State v. Barr, 897 N.E.2d 1161, 1166-68 (Ohio Ct. App. 2008) (citing Lordan to prohibit prosecution of drug possession charge under state law when the defendant had previously pled guilty to possession of the same drugs in violation of a city ordinance); State v. King, 398 P.3d 336, 349 n.4 (Or. 2017) (citing Lordan when the defendant pled guilty to assault and the State initiated a felony murder prosecution against him when the victim later died of injuries from the same assault).

Additionally, to obtain a DEL conviction, the State must prove that the conspiracy in which the defendant participated involved "a scheme or course of conduct."  RSA 318-B:2, XII (2017).  From this language, it follows that the

9

DEL statute requires the State to establish more than one incident of criminal conduct. See id. Accordingly, based on the facts underlying the defendant's 2016 plea agreement, the State could not establish the necessary "scheme or course of conduct" to convict the defendant on the DEL charge. RSA 318-B:2, XII (2017). Therefore, unlike the defendant in Lordan the defendant here did not "deprive[] himself of any meaningful defense" to the DEL charge by entering into the prior plea agreement. Lordan, 116 N.H. at 481.

We therefore conclude that the defendant's right to due process under Part I, Article 15 was not violated, because the facts giving rise to the defendant's November 2016 plea agreement and the facts supporting the defendant's DEL prosecution did not arise from "the same transaction." Id. at 482. Because the Federal Constitution provides no more protection of the defendant's due process rights than the State Constitution, State v. Ball, 124 N.H. 226, 231-33 (1983), we reach the same conclusion under the Federal Constitution. Accordingly, we conclude that the trial court did not err by denying the defendant's motion to dismiss on due process grounds.

### III. Conclusion

For the foregoing reasons, we affirm the defendant's DEL conviction. See RSA 318-B:2, XII (2017). Any issues that the defendant raised in his notice of appeal, but did not brief, are deemed waived. State v. Bazinet, 170 N.H. 680, 688 (2018).

Affirmed.

HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.